[S. F. No. 12394. Department One.—September 14, 1928.]

ADA MARY NEWSON, Appellant, v. ALIDA FAY HAWLEY et al., Respondents.

C. W. Humphreys and Gottesfeld, Mann, Humphreys & Carmody for Appellant.

George K. Ford and Ford, Johnson & Bourquin for Respondents.

CURTIS, J.—In this case the defendants made a motion for a directed verdict, which motion was denied and the case was thereupon submitted to the jury. Thereafter the jury rendered a verdict in favor of the plaintiff, and the court of its own motion set aside the verdict and ordered judgment in favor of the defendants. From this order this appeal was taken. ▮ By section 629 of the Code of Civil Procedure, enacted in 1923, it is provided that "When a motion for a directed verdict, which should have been granted, has been denied and a verdict rendered against the moving party, the court, at any time before the entry of judgment, either of its own motion or on motion of the aggrieved party, shall render judgment in favor of the aggrieved party notwithstanding the verdict." If, therefore, defendants' motion for a directed verdict should have been granted, then the order of the court setting aside the verdict and directing judgment in defendants' favor was in accordance with the terms of section 629 of the Code of Civil Procedure, above quoted, and should stand.

▮ The limits within which the trial court may exercise its power to direct a verdict have been definitely fixed and

determined by decisions of this court of comparatively recent rendition. In *Estate of Caspar,* 172 Cal. 147, it was held, page 149 [155 Pac. 631, 632], that "the right of a court to direct a verdict is, touching the condition of the evidence, absolutely the same as the right of the court to grant a nonsuit. It may grant a nonsuit only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such a verdict were given." To the same effect is *Estate of Sharon,* 179 Cal. 447, where the rule is stated in the following language, page 459 [177 Pac. 283, 288] : "It is a settled rule of law regarding trials by jury that in a proper case the court has full power to direct the jury to render a verdict. This power exists in favor of the defendant when there is no substantial evidence tending to prove all the controverted facts necessary to establish the plaintiff's case. It is not necessary that there should be an absence of conflict in the evidence. To deprive the court of the right to exercise this power, if there be a conflict, it must be a substantial one."

 This action was instituted to recover damages for the alienation of the affections of plaintiff's husband, Herbert John Newson. · The defendants are mother and daughter and are not related to the plaintiff or her husband. The evidence shows that after an acquaintance extending over about one year said Herbert John Newson and the defendant, Alida Fay Hawley, went through a form of marriage ceremony and thereafter cohabited together as husband and wife at intervals for about one month.

The evidence against the defendant, Lillie Hawley, is unquestionably insufficient to support any verdict or judgment against her. The most that can be claimed in favor of the evidence as against Lillie Hawley is that she knew that plaintiff was the wife of Newson, and that by being present at the purported marriage ceremony between her daughter and Newson she consented to such ceremony. There is no evidence that she in any way enticed Newson to leave his lawful wife and marry her daughter, or that she ever influenced him directly or indirectly in so doing. The

order of the trial court, therefore, in directing a judgment in favor of the defendant Lillie Hawley must be sustained.

As to the defendant Alida Fay Hawley, the evidence, in our opinion, shows that she was the dupe and victim of a designing and unscrupulous scoundrel rather than the pilferer of the affections of plaintiff's husband. She was but seventeen years of age when she met Newson, who sought to give her dancing lessons to fit her for a professional career on the stage. During this time she had occasion to meet plaintiff a number of times, some of which were at the home of plaintiff and Newson at number 1858 Geary Street, San Francisco. There is evidence to the effect that Newson was referred to in her presence and hearing as the husband of plaintiff, and that the children of plaintiff and Newson called Newson "daddy" in the hearing of said defendant. The evidence, however, is uncontradicted that Newson, by false and fraudulent statements, induced her to believe that plaintiff was not his wife, but was his sister-in-law, the widow of his deceased brother, and that the children were his brother's children and not his own. He further induced this defendant to go through a marriage ceremony with him, claiming that he was a single man and that his wife had died some years previously. At this time Alida Fay Hawley was only eighteen years old, while Newson gave his age at the time he secured the marriage license as thirty-three years. After this ceremony he spent one night with this defendant at a hotel in San Francisco, and then persuaded her to return to her mother until he could make permanent arrangements for a home for them. On two or three week-ends immediately following he took her to a hotel and after spending the night with her had her return to her mother, giving the same reason for her return as that previously given on the day after their purported marriage. The two defendants at this time had occasion to visit temporarily their former home at Walla Walla, Washington. While there the defendant Alida Fay Hawley wrote Newson two letters, directing them to number 1858 Geary Street, San Francisco, where she knew Newson resided with plaintiff and her children. On each of these letters she wrote a return address, signing the same "Mrs. H. J. Newson." These letters, as might have been expected, fell into the hands of the plaintiff, one of which was opened by her.

This one the defendant had signed "Your loving wife." Plaintiff immediately began an investigation of her husband's conduct with the result that she found his unlawful attempt to enter into a contract of marriage with the defendant Alida Fay Hawley. About this time the defendants returned from Walla Walla, and upon learning that Newson was the husband of plaintiff, the defendant Alida Fay Hawley immediately instituted legal proceedings and had her marriage with Newson annulled and has never lived with, nor had anything whatever to do with, Newson since learning that he was the husband of plaintiff.

We think this evidence shows without any substantial conflict whatever that the defendant Alida Fay Hawley acted in this unfortunate matter under the belief and conviction that Newson was an unmarried man, and that she did not maliciously nor intentionally deprive plaintiff of the consortium of her husband. While there may have been intimations in certain conversations had with her and in her presence and hearing that Newson was the husband of plaintiff, yet it is most apparent that whatever impressions such conversations had upon her, their effect was overcome and entirely effaced by the false and misleading statements and assurances of Newson. She denied that any such conversations had ever been had with her or in her hearing or that she had any information whatever that Newson was the husband of the plaintiff, until some time after her pretended marriage to him. Her denial, however, upon a motion for a directed verdict by her could not be considered by the trial court nor can it have any bearing upon this appeal from an order directing judgment in her favor. But, conceding that such conversations were had in her presence or with her, the evidence in our opinion shows that their effort was entirely nullified by the deception of Newson, and that when she accepted his attentions and thereafter consented to marry him and did, in fact, go through a marriage ceremony with him, she did so with the honest and sincere conviction that he was an unmarried man and therefore capable and legally qualified to become her lawful husband. Her entire conduct both before and after the marriage ceremony is not only consistent with this belief, but is inconsistent with any other reasonable theory of the case. She was but a young girl just out of

school when she met Newson, a mature man of experience. She was imbued with the idea that she possessed unusual ability as a dancer and might make for herself a successful career upon the stage. In this idea she was encouraged by Newson, who became her instructor, and held out to her the promise and hope that they would go on the stage together, and make for themselves both a name and a fortune. In this way he ingratiated himself into her confidence and became her trusted friend and adviser. Under these circumstances it is not strange that she would accept his statements as to his marriageable status, without further proof of their truthfulness and even against certain intimations which she had received from other sources. That she made no secret of her conduct in the entire matter is strikingly shown by the fact that while at Walla Walla she wrote letters addressed to the house where she knew he resided with the plaintiff and her children, on the envelopes of which she gave her own address, signing her name of "Mrs. H. J. Newson." There is no substantial conflict in the evidence as to the foregoing facts. It is, in our opinion, insufficient to show that the defendant Alida Fay Hawley acted with any improper motives in her conduct toward Newson or toward the plaintiff. On the other hand, the whole evidence in the case shows her to be the innocent victim of an unprincipled impostor.

The order appealed from is affirmed.

Seawell, J., and Preston, J., concurred.