[Civ. No. 4302. Third Appellate District.—November 30, 1931.]

ALFRED LANDERS, Appellant, v. CRESCENT CREAMERY COMPANY (a Corporation) et al., Respondents.

[Civ. No. 4303. Third Appellate District.—November 30, 1931.]

ROLAND GLENDENING, Appellant, v. CRESCENT CREAMERY COMPANY (a Corporation) et al., Respondents.

John Coker, Hamilton & Lindley, G. W. Adams and Emmett L. Fitzpatrick for Appellants.

Joe Crider, Jr., and Clarence B. Runkle for Respondents.

BURROUGHS, J., *pro tem.*—Two separate actions for damages were consolidated for trial. The injuries sustained by the plaintiffs were the result of a collision between a motorcycle on which the two plaintiffs were riding and a truck operated by the defendant Marsh Noe as the agent of the Crescent Creamery Company. At the conclusion of the evidence and before the case was submitted to the jury, the defendants moved for directed verdicts, which motions were denied, and the cases were submitted. The jury rendered verdicts in favor of the plaintiffs, and against the defendants, with damages assessed in favor of the plaintiff Glendening in the sum of $25,000, and in favor of the plaintiff Landars in the sum of $15,000. The jury was polled and stood eleven to one for the verdicts. Thereafter, upon motions of defendants, the court rendered judgment for defendants, notwithstanding the verdicts, and plaintiffs appealed. The appeals are consolidated.

The following facts are undisputed: Plaintiff Glendening was operating a motorcycle owned by plaintiff Landers, and Landers was riding behind Glendening, and on the same seat with him. They were proceeding in a northerly direction on Mission Road in the city of Los Angeles, at or near the point where Gallardo Street intersects said Mission Road. At the same time defendant Marsh Noe was driving an automobile truck owned by the defendant Crescent Creamery Company in a southwesterly direction, along the said Mission Road. At or near this intersection defendant Marsh

Noe turned the truck to the left, across Mission Road. The left front bumper and fender of the truck came in contact with the left side of the motorcycle, breaking the left leg and knee of each plaintiff, and throwing the motorcycle about ten feet in a southerly direction from the point of impact.

Appellants contend that the motion for a directed verdict was properly denied, and that therefore, under section 629 of the Code of Civil Procedure, a motion for judgment, notwithstanding the verdict, should not have been granted; that no legal justification for a judgment, notwithstanding the verdict, can be found in the language of the code. In *Newson* v. *Hawley*, 205 Cal. 188, page 189 [270 Pac. 364], the court said: "By section 629 of the Code of Civil Procedure, enacted in 1923, it is provided that 'when a motion for a directed verdict which should have been granted, has been denied and a verdict rendered against the moving party, the court, at any time before the entry of judgment, either of its own motion or on motion of the aggrieved party, shall render judgment in favor of the aggrieved party, notwithstanding the verdict'. If, therefore, the defendants' motion for a directed verdict should have been granted, then the order of the court setting aside the verdict and directing judgment in defendants' favor was in accordance with the terms of section 629 of the Code of Civil Procedure above quoted, and should stand."

The limits within which the trial court may exercise its power to direct a verdict have been definitely fixed and determined by decisions of this court of comparatively recent rendition. In *Estate of Caspar*, 172 Cal. 147, it was held, page 149 [155 Pac. 631, 632], that "the right of a court to direct a verdict is, touching the condition of the evidence, absolutely the same as the right of the court to grant a nonsuit. It may grant a nonsuit only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence, the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such a verdict were given."

In *Diamond* v. *Weyerhaeuser*, 178 Cal. 540, at page 542 [174 Pac. 38, 39], the court said: "If there was any sub-

stantial evidence tending to show that the collision was caused by negligence on the part of defendant's driver, the action of the court in directing a verdict was, of course, erroneous. The existence or nonexistence of negligence is ordinarily a question of fact to be determined by a jury. On the other hand the court may withdraw the case from the jury and direct a verdict where the evidence is undisputed, 'or is of such conclusive character that the court, in the exercise of a sound judicial discretion, would be compelled to set aside a verdict returned in opposition to it.' ''

A careful review of the plaintiff's case, disregarding conflicting evidence and giving to plaintiffs' evidence all the value to which it is legally entitled, and the legitimate inferences, shows that the traffic on Mission Road was heavy and that the motorcycle was traveling with the traffic on the extreme right; that there were two lines of cars on both sides of the street; that the traffic was moving at a rate of fifteen, twenty or twenty-five miles an hour, and that the plaintiffs were not passing machines. They were traveling at about twenty miles an hour in the traffic, and as they entered the intersection of Gallardo Street a car traveling in the same direction passed them on the left, cutting in in front of them. The motorcycle was traveling along close to the curb line, a little to the right of this last car which had just passed them immediately before the accident.

Plaintiff Glendening testified that they saw the traffic coming on the other side but did not particularly notice the truck until it turned toward them; that the truck passed other cars, and that the driver of the truck did not signal for the turn; that the motorcycle was about eight feet away from the point of collision when he saw the truck turn, and that the truck was about twelve or fifteen feet away from the point of collision. Plaintiff Glendening said that he swerved to the right to run up on that side toward the curb line, but the car that had just passed him cut in to the right so that he could not get in between them, between the car ahead and the curb; that the front wheel of his motorcycle was just in back of the right wheel of that car, and ''as he started to cut over I had to slow up, too'', and that he was afraid that if he pulled over, the rear wheel of that car would have caught him (referring to the car ahead); that this car started edging over ''just as soon as he passed us''; that he,

Glendening, applied his brakes and had almost stopped when the crash happened going maybe five miles an hour; that at the time the automobile cut to the right, the defendant's truck was "cutting over towards us"; that the truck passed three or four feet behind the automobile and struck the plaintiffs; that three motorcycles were in their party, one four or five hundred feet ahead, and the other, operated by Otis Cline, was following the plaintiffs.

Otis Cline testified by deposition that he was traveling behind plaintiffs some fifty or a hundred feet. "A truck came over towards them as they were in the intersection there, and Glendening turned just a little bit into the intersection to swing a little away from him, but he hit him anyhow." The driver of the truck hit the motorcycle. The motorcycle was driving on the right-hand side of the highway; that he did not see the truck until it turned and hit the motorcycle. "Q. How fast was the truck going when it struck the motorcycle? A. Well, I would say around twenty miles an hour as it came across there when he put on his brakes and slid. Q. How far did he slide? A. Oh, it looked to be about ten or fifteen feet." That the truck knocked the motorcycle about ten feet. "Q. How far from the motorcycle was the truck when you first saw it? A. Well, it was pretty close on. The truck was almost straight across the road when I saw it. I was watching them pretty close behind them." That the two motorcycles had been traveling at the same speed and about the same distance apart all the way through Los Angeles and "at the time there we were traveling about the same speed as other traffic on the street, we had not passed any cars."

Plaintiff Landers, who was on the seat with, and behind Glendening, testified that they were about twelve feet from the point of collision when he first saw the truck, and that they had just gotten into the intersection; that the truck was headed down Mission Road; that when they were in the intersection he saw the truck turn left; that he did not see the operator make any signal; that the truck was going pretty slow; that when it turned it was about ten feet away from the motorcycle. On cross-examination plaintiff Landers testified that when he first saw the truck it was about twenty feet from the motorcycle, and the motorcycle about twelve feet from the point of collision, and the truck

was fifteen or twenty feet from the point of collision and at the place of turning. An automobile passed the motorcycle just as the motorcycle got into the intersection, and the automobile was going in the same direction as the motorcycle; when the motorcycle was about four to six feet behind and to the right of the automobile, the automobile swerved over to the right, and the defendant's truck circled around the corner right into the side of the motorcycle, cutting behind the automobile.

Defendant Noe testified that he was driving a "Reo" truck west on Mission Road, twenty to twenty-three miles per hour. At Gallardo he slowed down, and was going to make a left-hand turn; he saw a lot of cars going east, when he reached a point almost even with the "button"; slowed down to about fifteen miles per hour, when he started to make the turn. He crossed the intersection at seven or eight miles per hour; that he saw the other two motorcycles go in back of him and then this one came in front of him. "Q. What did you do then with respect to your car, your truck? A. I let it roll on a few feet more, and I seen that these two motorcycles, the two men on the motorcycle, were not going to slow down, so I put on the brakes a little harder." After the truck and automobile came together, the truck did not go at all; it stopped right there. The motorcycle was about ten feet away. On cross-examination defendant Noe testified that he was traveling about fifteen miles an hour when he turned the "button"; at a point halfway between the two "buttons", he was going seven or eight miles per hour, and at the point where the collision occurred he was going at practically no speed at all. When the truck was in the middle of this distance between the two "buttons", the motorcycle was around about thirty-five or forty feet from him and about thirty-five or forty feet from the point of collision, and the truck was twenty-five or thirty feet from the point of collision. When the truck was traveling seven miles an hour he could stop in about ten feet. After the collision the motorcycle lay in the street. Witness showed the position of the motorcycle when it lay in the street, as about ten feet from the point of collision, at right angles to the course of the motorcycle, and in the line the truck was traveling.

The evidence of plaintiffs' witnesses, if taken as true, shows substantial proof of negligence on the part of the defendant Noe, in that he did not signal before turning, and that he could have stopped within ten feet when he was within thirty-five or forty feet of the motorcycle. He does not claim that his view of the motorcycle was obscured, but that he saw it coming, and that he saw it was not going to slow down. Plaintiffs' testimony shows by clear inference that a motor-car just ahead of him was also placed in jeopardy, which escaped by cutting to the right, but in so doing, cut off plaintiffs' chance to escape by speeding up to the right. We believe there is substantial evidence to show that plaintiffs were traveling with the traffic at a reasonable rate of speed; that after they had entered the intersection of Gallardo Street with Mission Road, they observed defendant turning into the traffic, and that he had not made a signal previous to, nor at the time of turning; that defendant turned his truck to cross heavy traffic, at an unreasonable rate of speed—fifteen miles per hour; that plaintiffs did everything possible, after perceiving their danger, to avoid a collision, and that defendant might have stopped his truck in time to have avoided hitting plaintiffs; that while plaintiffs had no opportunity to appreciate any danger from the truck until it was turning, defendant, knowing that he intended to cross this intersection, should have been careful not to jeopardize the traffic, through which he was crossing; that defendant was negligent in that he saw the plaintiffs approaching, and did not exercise ordinary care to avoid colliding with them. That plaintiffs were not, as a matter of law, guilty of contributory negligence, and any question of negligence was properly submitted to the jury.

The evidence of grave injury to both plaintiffs is not controverted, but as to the manner in which the accident occurred and the negligence of the parties, there is a strong conflict in the evidence. Defendant claims to have signalled his intention to turn; that plaintiffs were traveling at a much greater rate of speed; and other witnesses presented by the defendants supported their version of the case. But, under the decisions of this state, "The rule as to a directed verdict is not that a verdict may be directed whenever the evidence is such that upon motion the court would grant a new trial. The consequences which follow from a directed

verdict and a new trial are so different that the rule applicable in the two instances should in reason not be the same." (*Estate of Caspar*, 172 Cal. 147 [155 Pac. 631]; *McCarthy* v. *Pacific Elec. R. Co.*, 82 Cal. App. 503 [255 Pac. 868].)

The court will not grant a nonsuit if there be substantial evidence to support the necessary elements of plaintiff's case, for the same reasons a motion for a directed verdict should be denied, and, the motion for a directed verdict having been properly denied, had the court a right to give judgment notwithstanding the verdict? We think upon the authority of *Newson* v. *Hawley, supra,* if the motion for a directed verdict was properly denied, then the court should not have rendered judgment, notwithstanding the verdict.

On appeal from a judgment notwithstanding the verdict, and in construing section 629 of the Code of Civil Procedure, it is the duty of the appellate court to read the testimony in a light most advantageous to the plaintiff, and resolving all conflicts in his favor, give to him the benefit of every fact pertinent to the issues involved, which may reasonably be deduced from the evidence. The material facts were in dispute, and the consideration of oral testimony and credibility of witnesses was involved, and if under such conditions, and after a careful study of the evidence, it appears that there is substantial evidence to support every essential element of plaintiffs' case, the verdict of the jury cannot be set aside, and judgment notwithstanding the verdict is erroneous.

In *Hunt* v. *United Bank & Trust Co.*, 210 Cal. 118 [291 Pac. 184, 188], after referring to the case of *Newson* v. *Hawley, supra,* it is said: "If, in the opinion of the court, the evidence is unreliable, it is its duty to grant a new trial, and it may grant such new trial even where there is substantial evidence to sustain the verdict, if it believes that the evidence preponderates against the verdict." At page 120 of 210 Cal. it is said: "The court had no power, under section 629 of the Code of Civil Procedure, to grant the motion it did, by reason of the conflict in the evidence. The only relief the defendant could obtain from the result of the verdict and judgment against it was by a new trial, which the court may have granted notwithstanding the conflict in the evidence, but which it failed to do. . . . It is the established

law that such a motion cannot be granted where there is a conflict in the evidence, although the conflict is such that the trial court is justified in granting a new trial notwithstanding it, as the motion must be based upon such a state of facts as will warrant the court in granting it without trespassing on the province of the jury to be judges of all questions of fact in the case. (15 R. C. L. 607.) To hold otherwise would result in the abridgment of the constitutional right to a jury trial."

In *Reinders* v. *Olsen,* 60 Cal. App. 765, at page 767 [214 Pac. 268, 270], it is said: "It is immaterial whether the trial judge actually believes the evidence to be true or not; plaintiff's case must be taken absolutely at face value; he is entitled to every favorable inference fairly arising from the evidence produced by him; the motion is equivalent to a demurrer to the evidence, or an objection that, admitting all the evidence introduced to be true, and disregarding all inconsistencies therein, if any, the evidence is insufficient in law to entitle plaintiff to a judgment in his favor. It is only when reasonable men can draw but one inference, and that inference pointing unerringly to the negligence of the plaintiff, contributing directly or proximately to his own injury, that the law will step in and forbid a recovery. 'It is only where no fact is left in doubt, and no deduction or inference other than negligence can be drawn by the jury, that contributory negligence is established. Even where the facts are undisputed, if reasonable minds draw different conclusions upon the question of negligence, the question is one of fact for the jury.' "

We are satisfied that there is substantial evidence in the record to sustain the verdict of the jury, and that the court erred in granting defendants' motions for judgment notwithstanding the verdict.

The judgments, and each one of them, are reversed and the cases remanded to the trial court, with directions to render judgments in conformity with the verdicts. The defendants may thereafter take such proceedings as are provided by law after the entry of a judgment.

Thompson (R. L.), J., and Plummer, Acting P. J., concurred.