[Civ. No. 11051.   Second Appellate District, Division One.—September 24, 1936.]

BETTY COLLINS, a Minor, etc., Appellant, v. JACK NELSON, a Minor, et al., Respondents.

Avery M. Blount and E. B. Drake for Appellant.

Joe Crider, Jr., and E. H. Tilson for Respondents.

WHITE, J., *pro tem.*—This is an action for damages for personal injuries sustained by the minor plaintiff Betty Collins, who was a guest in an automobile driven by the minor defendant Jack Nelson, which overturned on Pico Boulevard in the vicinity of Nineteenth and Twentieth Streets in the city of Santa Monica, about 8:30 o'clock on the evening of September 13, 1935. Joined as plaintiff in the capacity of guardian *ad litem* is Ray A. Collins, the father of the minor plaintiff. Named as defendants are the owner and driver of the guest car, Jack Nelson, a minor, and his father and mother, who had signed his application for an operator's license. The cause was tried before the court with a jury, and at the close of evidence defendant Jack Nelson moved for a directed verdict against the plaintiff. This motion was denied, and thereafter a verdict was returned by the jury in favor of plaintiff and against the minor defendant Jack Nelson for $6,000, whereupon said defendant made a motion for judgment in his favor notwithstanding such verdict; said motion being made in the alternative form, reserving the right to apply for a new trial if such motion were denied. This motion was granted and the court ordered judgment to be entered in favor of the defendant notwithstanding the verdict. From such judgment plaintiff prosecutes this appeal.

The motions for a directed verdict and for judgment notwithstanding the verdict were made on the grounds that

the evidence is insufficient to support a verdict in favor of plaintiff, and that the entire record is barren of any evidence showing any wilful misconduct on the part of the minor defendant, Jack Nelson.

Section 629 of the Code of Civil Procedure provides, in part, that when a motion for a directed verdict which should have been granted is denied and a verdict rendered against the moving party, the court, at any time before the entry of judgment, either of its own motion or on motion of the aggrieved party, shall render judgment in favor of the aggrieved party notwithstanding the verdict. In the instant case, a motion for a directed verdict was made and by the court denied, and the judgment recites that in the opinion of the trial court the motion for a directed verdict should have been granted, for which reason, the judgment further declares, the motion for judgment in favor of the defendant notwithstanding the verdict was granted.

The question before us, therefore, is whether the trial court should have granted the motion for a directed verdict, for in the final analysis of this question, it is manifest that no judgment may ever be rendered or ordered by the trial court notwithstanding the verdict, either before or after entry of judgment on the verdict, unless it appears that the motion for a directed verdict should have been granted in the first instance. (*Tracey* v. *L. A. Paving Co.*, 4 Cal. App. (2d) 700, 703 [41 Pac. (2d) 942].)

The rule governing the power of the trial court to direct a verdict has received the attention of the courts of this state on numerous occasions, and the principles were reviewed in *Estate of Lances*, 216 Cal. 397 [14 Pac. (2d) 768], quoted with approval in *Estate of Flood*, 217 Cal. 763, 768 [21 Pac. (2d) 579], wherein our Supreme Court says:
" . . . 'It has become the established law of this state that the power of the court to direct a verdict is absolutely the same as the power of the court to grant a nonsuit. A nonsuit or a directed verdict may be granted ''only when, *disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled, herein indulging in every legitimate inference which may be drawn from that evidence,* the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of plaintiff if such verdict were given''. (*Newson*

v. *Hawley*, 205 Cal. 188 [270 Pac. 364]; *Perera* v. *Panama Pacific Int. Exp. Co.*, 179 Cal. 63 [175 Pac. 454]; *Estate of Sharon*, 179 Cal. 447 [177 Pac. 283]; *Estate of Gallo*, 61 Cal. App. 163, 175 [214 Pac. 496]; 24 Cal. Jur., pp. 912–918.) Unless it can be said as a matter of law, that, when so considered, no other reasonable conclusion is legally deducible from the evidence, and that any other holding would be so lacking in evidentiary support that a reviewing court would be impelled to reverse it upon appeal, or the trial court to set it aside as a matter of law, the trial court is not justified in taking the case from the jury. (*Umsted* v. *Scofield Eng. Const. Co.*, 203 Cal. 224, 228 [263 Pac. 799].) A motion for a directed verdict "is in the nature of a demurrer to the evidence, and is governed by practically the same rules, *and concedes as true the evidence on behalf of the adverse party, with all fair and reasonable inferences to be deduced therefrom. . . . Even though a court might be justified in granting a new trial it would not be justified in directing a verdict on the same evidence. . . .* The power of a court in passing upon such motions is strictly limited. It has no power to weigh the evidence, but is bound to view it in the most favorable light in support of the verdict. . . . If, in the opinion of the court, the evidence is unreliable, it is its duty to grant a new trial, and it may grant such trial even where there is substantial evidence to sustain the verdict, if it believes that the evidence preponderates against the verdict." (*Hunt* v. *United Bank & Trust Co. of California*, 210 Cal. 108, 117, 118 [291 Pac. 184, 188].) In other words, the function of the trial court on a motion for a directed verdict is analogous to and practically the same as that of a reviewing court in determining, on appeal, whether there is evidence in the record of sufficient substance to support a verdict. *Although the trial court may weigh the evidence and judge of the credibility of the witnesses on a motion for a new trial, it may not do so on a motion for a directed verdict.*' (Italics ours.)"

Thus we see that the right to grant a motion for a directed verdict is to be exercised only when, after giving to the testimony of the plaintiff its full scope and indulging in all favorable and legitimate inferences from it, there is no substantial evidence to support a verdict for the plaintiff.

■ We proceed, then, upon the basis that in order to defeat the motion for a directed verdict plaintiff was required merely to offer competent evidence of such a substantial nature that it might reasonably be inferred therefrom that the driver of the guest car was guilty of wilful misconduct.

The evidence indicates that the minor defendant was driving his automobile west on Pico Boulevard on the early evening of September 13, 1935, with the minor plaintiff and two others with him as his guests. As to the minor defendant's conduct in the operation of his automobile preceding the accident, we have the following testimony from the minor plaintiff, Betty Collins:

"Q. By Mr. Drake: Go back a quarter of a mile, then. A. He was passing all the cars that were on the road, he was passing some of them on the right and some of them on the left. He was dodging in and out amongst the cars. Do you want me to tell how the accident happened?

"Q. Go ahead and tell how he turned over, if you will. A'. We had passed a few cars on the left-hand side. We were out in the middle of the street then, the cars that were in front of us were not going fast enough, he went around to the right of the next car. When we got over to the right-hand side of the road there was a car a few car lengths in front of us that was almost standing still, or else it was stopped; I told him to stop, to slow up, because he couldn't make it. Instead of doing that he just—

.    .    .    .    .    .    .    .    .    .    .    .

"A. Yes. Instead of doing that he just kept on going. When he got up to the car that was going very slow in front of us he tried to pass it on the left-hand side, and in doing so his back fender came in contact with the front fender of the car in the next lane to us. He looked back to see what damage had been done. We started towards the curb, so I yelled to him to turn around. He did; then he cramped the wheel to avoid hitting that curb. We went in the middle of the street and turned over.

.    .    .    .    .    .    .    .    .    .    .    .

"Q. Had you said anything to him before that about his driving? A. Yes. Q. What had you said? A. When he

was dodging in and out among the cars I told him not to do it, I told him to go slower, that he should be very careful.

. . . . . . . . . . . .

"Q. How fast would you say you were going when you passed the Stutz, turned across and went over, turned over? A. I should say around 50 miles an hour."

There is also in the record testimony to the effect that for about a quarter of a mile before the accident and when the minor plaintiff spoke to the minor defendant driver, the latter was driving at the rate of 50 miles per hour, and continued at this speed for the entire quarter of a mile preceding the time of the accident. With reference to the condition of traffic on the highway, the minor defendant himself testified, through his deposition which was introduced at the trial, that "there were quite a few cars around", and in answer to a question as to how fast in his opinion he was driving at the time he was passing the automobiles immediately before the accident, the minor defendant responded, "About 45 miles an hour."

In the evidence given by the minor defendant we find the following:

"Q. Isn't it a fact that Miss Collins said to you on occasions when you were passing these other cars, 'Don't do that. Don't cut in and out of this traffic?' A. Well, she told me to be more careful. Q. Told you to be more careful. Just state how she said that. That might be a conclusion as to what she told you. Tell us what she did say that you thought she wanted you to be more careful if you remember. A. Well, she said something like, 'Jack, don't do that.' Q. What were you doing when she said, 'Jack, don't do that?' A. I was passing a car—just finished passing. Q. Weren't you cutting out of your lane of traffic and going around a car? A. Yes. . . . Q. . . . Now when she said, 'Don't do that; be careful,' did you slow down your speed? A. I was about to pass this other car— Q. Just answer the question. Did you change your method of driving or slacken your speed after she said that or did you proceed just as you had been driving? A. I drove just as I had been. Q. In other words, you didn't pay any attention to what she said about being careful? A. No, sir. Q. You just went right on like you had been driving? A. Yes, sir."

With reference to the condition of the brakes on his automobile, the minor defendant testified as follows:

"Q. What was the condition of your brakes in your opinion? A. Well, I had had them adjusted but they didn't work so hot. Q. What do you mean by that, you couldn't stop very quick with them? A. No, sir. Q. You felt they were out of adjustment to some extent? A. Yes, they got out quite often. Q. At this particular time? A. They always were practically out of adjustment so I guess they were at this time. Q. As a matter of fact you had them relined immediately after this accident happened, didn't you? A. Yes, sir."

Possibly it is true, as contended by respondents in their brief, that the brakes were not a proximate cause of the accident, whether they were defective or not, because no attempt was made at any time to use the brakes which caused or contributed to the accident. Conceding this to be true, nevertheless, the condition of the brakes throws some light upon the state of mind and conduct of the minor defendant driver. Surely it cannot be claimed that driving an automobile with defective brakes at the rate of 45 to 50 miles per hour on Pico Boulevard, "cutting in and out among the automobiles", constitutes anything but a wanton and reckless disregard of the possible result of a combination of speed, erratic driving and defective brakes.

Upon the record before us, and in the light of the testimony herein set forth, which we must view in the light most favorable to plaintiff, and without consideration of opposing or conflicting evidence, we conclude that such evidence, if believed by the jury, would support a finding that the defendant driver operated his automobile with a knowledge that serious injury to the occupants would be the probable (as distinguished from the possible) result of his conduct, and that his conduct indicated a wanton and reckless disregard of its possible result. It might here be stated that at the conclusion of plaintiff's case, with the foregoing testimony before the jury, after making a motion for a nonsuit defendant rested without producing any witnesses in his behalf, and thereupon made a motion for a directed verdict, which was denied. Conceding the existence in the record of evidence somewhat in conflict with the foregoing, still such conflict does not destroy the substantiality of the testimony

herein quoted from the evidence given by the minor plaintiff and the defendant driver, because although the trial court may weigh the evidence and judge of the credibility of the witnesses on a motion for a new trial, it may not do so on a motion for a directed verdict.

Under the rules governing directed verdicts and the conclusions we have drawn from the record of the evidence, as above stated, we are of the opinion that the trial court was in error when it decided, after rendition of the verdict, that a verdict for the defendant should have been directed when that motion was made in the first instance, and therefore did not have the right to order judgment notwithstanding the verdict.

The judgment is reversed and the cause remanded, with directions to the court below to enter judgment on the verdict as rendered.

York, Acting P. J., and Doran, J., concurred.