[No. A081961. First Dist., Div. Five. May 14, 1999.]

LEWIS WILLIAMS, Plaintiff and Appellant, v.
CITY OF BELVEDERE, Defendant and Respondent.

86

**COUNSEL**

Law Offices of Peter B. Brekhus, Peter B. Brekhus, Linda J. Philips and Elizabeth A. Brekhus for Plaintiff and Appellant.

Gary T. Ragghianti, City Attorney; Bien & Summers, Elliott L. Bien; Ragghianti, Freitas, Montobbio, Wallace and David P. Freitas for Defendant and Respondent.

## OPINION

JONES, P. J.—Lewis Williams filed a complaint against the City of Belvedere alleging it had discriminated against him on the basis of race when it refused to hire him as a police officer. The trial court ruled Belvedere was entitled to prevail because Williams had failed to exhaust properly his administrative remedies prior to filing suit. Williams now appeals contending the court interpreted and applied the applicable administrative claim statute incorrectly. We disagree and will affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1994, Belvedere wanted to hire an entry level police officer for its five-person police department. The city placed advertisements, collected applications, and selected persons to interview. One of the persons chosen for an interview was Williams, an African American with 23 years of experience in law enforcement.

The hiring panel gave Williams high ratings in most categories. Nevertheless, there was some concern over whether Williams was appropriate for the job which was open. Much of Williams's experience was in correctional work and Belvedere "d[idn't] even have a holding cell." In addition, Williams stressed in his interview that he was interested in training and nurturing the city's "newer officers." However, Belvedere's Police Chief, Glenn Accornero, said he was not "looking for a supervisor." Finally, Accornero was concerned that Williams, whose most recent experience was as an investigator, might become bored patrolling in a community with a low crime rate. As Accornero explained, "I wasn't sure . . . what motivation I could bring him."

In light of these concerns, Belvedere decided to offer the job not to Williams, but to another applicant who had prior law enforcement experience, Carl Cruz. The hiring panel was impressed with Cruz's education, prior training, and physical presence. In addition, the panel thought that Cruz's level of experience was more appropriate for the entry level job that was available. As another member of the hiring panel, Belvedere's former Police Chief Frank Barner observed, it seemed as though Cruz could be "easily led." Finally, the panel believed that Cruz's ability to speak Spanish was an asset given the fact that there were no other Spanish-speaking officers working in the area.

On June 21, 1994, Belvedere notified Williams by letter that he had not been selected for the position. In pertinent part, the letter told Williams

"[r]egretfully, you were not chosen to continue in the selection process. [¶] Good luck to you in the future."

Cruz began working for Belvedere as a probationary employee as is provided in the city's personnel rules. However Cruz did not complete his probation successfully, so in July or August 1995, the city initiated a "brand new" selection process. Once again, Belvedere distributed advertisements, collected applications and conducted interviews. Ultimately, Belvedere selected two new police officers.

On October 27, 1995, Williams learned that racial discrimination may have played a part in the decision not to hire him. At trial, Stephen Hahn, a member of the hiring panel, related a remark made by Police Chief Accornero while the panel discussed Williams's suitability for the job. Chief Accornero allegedly said, "I don't want to be prejudiced or anything, but I just don't know how the people of Belvedere would feel about having a black [police] officer." According to Hahn, former Police Chief Barner then replied, "Glenn, the people of Belvedere pay you to be prejudiced for them."

Williams was understandably upset when he heard about the comments in question and on November 13, 1995, he filed an administrative claim with the Department of Fair Employment and Housing (DFEH) alleging discrimination based on race. A letter accompanying the claim asked the DFEH to issue a right to sue letter immediately because Williams preferred to pursue his remedies in court. The DFEH, as was its practice, complied with Williams's request and the next day, on November 14, 1995, it issued him a right to sue letter. Eight months later, on July 26, 1996, Williams filed a complaint against Belvedere alleging discrimination based on race.

The case proceeded to a jury trial where Williams presented the evidence we have quoted which suggested Williams had been the subject of discrimination. Belvedere denied that any discrimination had occurred and it presented testimony from other members of the hiring panel who said they did not discuss the issue of race. The jury was never given the opportunity to resolve this factual dispute because the case was resolved by the court on procedural grounds. After six days of testimony, Belvedere moved for a directed verdict arguing it was entitled to prevail because Williams had not filed his administrative claim with the DFEH in a timely fashion. Belvedere relied on Government Code[1] section 12960 which states that a party alleging discrimination must first file an administrative claim with the DFEH no

---

[1]All statutory references are to the Government Code.

more than "one year from the date upon which the alleged unlawful practice . . . occurred . . . ." Belvedere noted that the unlawful discrimination alleged was its refusal to hire Williams, an event which occurred on June 21, 1994. Since Williams had not filed his administrative claim with the DFEH until November 13, 1995, the claim was too late. The trial court agreed and entered a judgment in favor of Belvedere. This appeal followed.

## II. DISCUSSION

### A. *Standard of Review*

Before we can address the merits of this appeal, we must decide what standard of review to apply. While Belvedere argued in the trial court that it was entitled to prevail pursuant to a "directed verdict," the record shows a different procedure was used. A motion for a directed verdict is a procedural device that is used to screen out cases that are too weak to support a jury verdict. Such a motion may be granted " 'only when, disregarding conflicting evidence and giving to plaintiff's evidence all the value to which it is legally entitled . . . the result is a determination that there is no evidence of sufficient substantiality to support a verdict in favor of the plaintiff if such a verdict were given.' " (*Estate of Lances* (1932) 216 Cal. 397, 400 [14 P.2d 768]; quoting *Newson* v. *Hawley* (1928) 205 Cal. 188, 190 [270 P. 364]; see also 7 Witkin, Cal. Procedure (4th ed. 1997) Trial, § 431, pp. 492-493.) However here, Belvedere contends, and Williams does not dispute, that the parties did not ask the court simply to determine whether the case was strong enough to support a jury verdict. Instead they asked the court to act as the trier of fact on the issue of whether Williams had filed a timely administrative claim. Indeed, Williams stated in his trial brief that this was an issue "the judge should decide and not the jury." In effect, the parties submitted an affirmative defense to the court for decision.

The fact that the trial court acted as a trier of fact has significant implications for the standard of review. If this was an appeal from a true directed verdict, we would be obligated to view the record in the light most favorable to the appellant: (*Colbaugh* v. *Hartline* (1994) 29 Cal.App.4th 1516, 1521 [35 Cal.Rptr.2d 213].) However since the trial court acted as a trier of fact, the court's factual findings, express or implied, must be affirmed so long as they are supported by substantial evidence. (*APSB Bancorp* v. *Thorton Grant* (1994) 26 Cal.App.4th 926, 932 [31 Cal.Rptr.2d 736]; *Plate* v. *Sun-Diamond Growers* (1990) 225 Cal.App.3d 1115, 1125 [275 Cal.Rptr. 667].) Furthermore, we must indulge in all

presumptions that are necessary to support the judgment. (*Denham* v. *Superior Court* (1970) 2 Cal.3d 557, 564 [86 Cal.Rptr. 65, 468 P.2d 193].) As we will discuss below, these principles affect significantly the resolution of this appeal.

### B. *Exhaustion of Administrative Remedies*

Williams contends the trial court erred when it ruled that he had failed to exhaust properly his administrative remedies prior to filing suit. He views this case as providing an opportunity to establish a broadly applicable rule concerning when the statute of limitations begins to run in a wrongful refusal to hire case. We decline to create a broadly applicable rule by judicial decision, when this case can be resolved by a straightforward application of the controlling statutes.

The California Fair Employment Housing Act (FEHA) (§ 12900 et seq.) makes it illegal for an employer, "because of . . . race . . . to refuse to hire or employ [a] person . . . ." (§ 12940, subd. (a).) Before a person may file a civil complaint alleging a violation of this statute, he or she must first file an administrative claim with the DFEH. (§ 12960.) Such a claim must be filed no more than "one year from the date upon which the alleged unlawful practice . . . occurred; except that this period may be extended for not to exceed 90 days following the expiration of that year, if a person . . . first obtained knowledge of the facts of the alleged unlawful practice after the expiration of one year from the date of their occurrence." (§ 12960.) "The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA." (*Romano* v. *Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492 [59 Cal.Rptr.2d 20, 926 P.2d 1114]; see also *Keiffer* v. *Bechtel Corp.* (1998) 65 Cal.App.4th 893, 895-896 [76 Cal.Rptr.2d 827].)

Here, Williams alleged Belvedere had discriminated against him on the basis of race when it refused to hire him as a police officer. The record shows that on June 21, 1994, Belvedere told Williams by letter that he would not be hired. The record also shows Williams did not file an administrative claim with the DFEH until November 13, 1995, much more than one year plus ninety days after the date of the alleged discriminatory act. Since Williams did not file a timely administrative claim, the trial court correctly ruled Belvedere was entitled to prevail. (*Romano* v. *Rockwell Internat., Inc.*, *supra*, 14 Cal.4th at p. 492.)

Williams contends that the court should not have ruled in favor of Belvedere because his administrative claim was in fact timely. His first

argument is based on the assertion that the decision not to hire him was not final in June 1994 when Belvedere notified him he had not been selected, but in 1995 when Belvedere successfully filled the police officer position. Williams makes this argument in at attempt to come within the scope of the "continuing violation" doctrine that holds a complaint arising under the FEHA is timely if *any* of the discriminatory practices continue into the limitations period. (*Accardi* v. *Superior Court* (1993) 17 Cal.App.4th 341, 349 [21 Cal.Rptr.2d 292]; see also *City and County of San Francisco* v. *Fair Employment & Housing Com.* (1987) 191 Cal.App.3d 976, 983 [236 Cal.Rptr. 716] [holding an administrative complaint challenging an eligibility list was timely because promotions continued to be made from the list during the year preceding the filing of the complaint].)

We reject this argument because it is based on a false premise, i.e., that the decision not to hire Williams was not final in June 1994. That was a factual issue which was the subject of conflicting evidence at trial. Williams, for his part, relied on a portion of Belvedere's personnel manual that states new police employees must successfully complete 18 months of probation and that the "probationary period [is] considered as an extension of the selection procedure . . . ." Belvedere, by contrast, relied on the unequivocal wording of the June 21, 1994, letter which told Williams he had not been "chosen to continue in the selection process," on testimony that showed Belvedere did not create or keep any sort of formal or informal "eligibility list," and on testimony that showed when the person initially selected to fill the position failed to complete his probation, Belvedere did not go back and contact Williams or any other candidate who had not been selected. Instead, it initiated a "brand new" selection process. When the trial court ruled in favor of Belvedere, it impliedly accepted Belvedere's version of the facts and ruled that the decision not to hire Williams was final in June 1994. That implied factual finding, supported as it is by substantial evidence, is binding on us on appeal. (*APSB Bancorp* v. *Thorton Grant, supra,* 26 Cal.App.4th at p. 932.)

Next, Williams contends his administrative claim was timely under the reasoning of *Romano* v. *Rockwell Internat., Inc., supra,* 14 Cal.4th 479. The plaintiff in *Romano* was told, two and one-half years before he was actually terminated, that he would be terminated, and the issue for the court was whether the time limit for filing an administrative claim began to run when the plaintiff was notified that he would be terminated or when he was actually terminated. The Supreme Court interpreted the applicable statutes and concluded the latter date was applicable, "by the terms of . . . section 12960 the limitations period applicable to administrative claims begins to

run 'after' the unlawful employment practice has 'occurred.' If the administrative complaint must be filed within one year 'after' the unlawful practice—here, a discharge—'occurred,' then for the purpose of that complaint, the administrative cause of action must accrue and the statute of limitations must run from the time of the actual termination. It would not run from the earlier date of notification of discharge, because on that date the unlawful practice (that is, the discharge) had not yet 'occurred.'" (*Id.* at p. 493.)

Williams interprets *Romano* to mean that notification of a job-related decision does not trigger the time limit for filing an administrative complaint. Thus he contends the time for filing his administrative complaint did not begin to run in June 1994 when he was notified that he would not be hired, but in 1995 when the position was ultimately filled. We are unpersuaded. While the *Romano* court ruled that under the specific facts presented, notification did not trigger the time limit for filing an administrative complaint, it did not purport to set forth any sort of all encompassing rule. Rather, the court interpreted the applicable statutes according to their plain meaning and applied those statutes to the facts at hand. Here, as we have noted, Williams alleged Belvedere discriminated against him when it "refuse[d] to hire or employ [him]."[2] (§ 12940, subd. (a).) The record shows that refusal occurred on June 21, 1994, when Belvedere notified Williams, by letter, that he would not be hired. We conclude that under the plain wording of sections 12940 and 12960, the time limit for filing an administrative claim started to run on that date. *Romano* does not compel a contrary conclusion.

Williams's next argument is based on equitable principles. The record shows that Williams did not learn of the alleged discriminatory comments until October 27, 1995, more than 16 months after Belvedere had notified him he would not be hired. As Williams correctly notes, by that point, the time for filing a timely administrative claim with the DFEH had already passed. Accordingly, Williams asks us to exercise our equitable powers and rule that the time for filing an administrative claim was tolled during the period he did not know he was the subject of discrimination. We decline to adopt such a rule because the statute in question, section 12960, already addresses that issue. It states an administrative claim must be filed no more than "one year from the date upon which the alleged unlawful practice . . . occurred" but that this period *"may be extended for not to exceed 90 days*

[2] Appellant also contends Belvedere discriminated against him because it "refuse[d] to select [him] for a training program leading to employment . . . ." (§ 12940, subd. (a).) We decline to address this argument because Williams never raised it in the trial court. (See 9 Witkin, Cal. Procedure, *supra*, Appeal, § 394, p. 444.) Indeed, since Williams first asserted the argument in his reply brief, it is doubly waived. (*Id.*, § 616, pp. 647-648.)

*following the expiration of that year, if a person . . . first obtained knowledge of the facts of the alleged unlawful practice after the expiration of one year from the date of their occurrence.*" (§ 12960, italics added.) Thus the Legislature anticipated there may be situations where a person does not learn he was the subject of discrimination until after the one-year period has passed, and it provided a remedy when that occurs: an extension "not to exceed 90 days." Since the Legislature has provided a remedy for the problem Williams has identified, we decline to formulate a different remedy. We recognize the harshness of this statutory scheme which provides no relief for the claimant who remains ignorant of the existence of a claim until after the statutory deadline for filing the claim has passed. We are constrained, however, to leave this issue of policy to the Legislature. ■ "Once the Legislature has evidenced an intent to comprehensively define the contours of a particular field . . . such complex policy determinations must plainly remain beyond the reach of our equitable jurisdiction." (*Pacific Scene, Inc.* v. *Peñasquitos, Inc.* (1988) 46 Cal.3d 407, 413-414 [250 Cal.Rptr. 651, 758 P.2d 1182].)

■ Finally, relying primarily on language from *Carter* v. *Smith Food King* (9th Cir. 1985) 765 F.2d 916 (*Carter*), Williams contends that even if he did not file a timely administrative claim, his civil complaint must still be considered valid because the DFEH issued him a right to sue letter. We think Williams has misapplied the language upon which he relies. The issue in *Carter* was validity of the DFEH's practice of issuing right to sue letters at an individual's request. The *Carter* court rejected any implication that an individual who requests and receives a right to sue letter has failed to exhaust his administrative remedies stating, "when a state agency charged with administering a particular statute determines that an individual has the right to sue under that statute and so informs him, the claimant may justifiably rely on the agency's representation, even if the state agency is in error." (*Id.* at p. 924.) Williams interprets this quotation as meaning that his suit must be considered timely even though he did not file a timely administrative claim because the DFEH issued him a right to sue letter. However, no one disputed in *Carter* that the plaintiff had filed a timely administrative claim so the court had no reason to decide whether the failure to file such a claim could be excused. ■ Cases are not authority for issues that are not presented. (*Lubetzky* v. *Friedman* (1991) 228 Cal.App.3d 35, 45 [278 Cal.Rptr. 706].) ■ We conclude the quoted language from *Carter* cannot be read as overturning the rule, long applied in California, that the timely filing of an administrative claim is a prerequisite to filing a civil suit. (*Romano* v. *Rockwell Internat., Inc., supra,* 14 Cal.4th at p. 479.)

We conclude the trial court correctly ruled Belvedere was entitled to prevail because Williams did not file a timely administrative claim.[3]

## III. DISPOSITION

The judgment is affirmed.

Haning, J., and Stevens, J., concurred.

---

[3]Belvedere has filed a motion asking that sanctions be imposed against Williams's attorney because the briefs he filed were allegedly defective. We conclude sanctions are not warranted and deny the motion.