Filed 2/14/25  Baek v. County of Los Angeles CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| LINDA BAEK, | B335323 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 21STCV16667) |
| v. | |
| COUNTY OF LOS ANGELES, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Douglas W. Stern, Judge.  Reversed and remanded.

Lazarski Law Practice and Bryan J. Lazarski for Plaintiff and Appellant.

Sheppard, Mullin, Richter & Hampton, Ronda D. Jamgotchian, Paul Berkowitz, and Hilary Habib for Defendant and Respondent.

_____

Plaintiff and appellant Linda Baek sued defendant and respondent County of Los Angeles (the County), alleging violations of the Fair Employment and Housing Act, Government Code section 12900 et seq. (FEHA). Baek, a Deputy District Attorney (DDA), claimed that after she reported harassment and disparate treatment, the County retaliated against her by, among other things, failing to promote her. Baek also alleged the County failed to prevent harassment, discrimination, and retaliation.

The trial court granted summary judgment or, alternatively, summary adjudication. We conclude that the County failed to meet its burden to demonstrate Baek cannot establish the elements of her retaliation cause of action or that the County has a complete defense. Further, triable issues of material fact exist regarding Baek's claim that the County failed to promote her in retaliation for her protected activity. We therefore reverse and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 1995, the County hired Baek as a DDA I. Between 1995 and 1997, Baek tried 11 felony cases to a jury. She was promoted to DDA II in 1998, and to DDA III in 2000.

Baek alleged that in June 2014, Bob Knapp, an employee who conducted office hearings for juveniles, invited her to his office to discuss a trip she was planning. According to Baek, once she was in his office, Knapp began to stroke her arm. Baek jumped back, left Knapp's office, returned to her own, and closed the door. Knapp followed Baek to her office and stood behind her desk chair. He put a hand on her back, over her dress, where her bra strap was. Baek told Knapp to get out. Baek testified that

2

she immediately told her friend, Joanne Baeza, who was an assistant head deputy. Baek did not report the incident to human resources or ask Baeza to report it. However, she believed Baeza should have reported the incident.

Baek received overall ratings of "Met Expectations (Competent)" or "Exceeded Expectations (Very Good)" on her performance evaluations after this incident.

In 2016, Baek learned that the post-conviction and discovery division (PC&D) was looking for DDAs. Many of the division's employees worked in Long Beach, which was closer to Baek's home than downtown Los Angeles. In December 2016, she interviewed with Brian Schirn, who hired her to PC&D.

When Baek was transferred to PC&D, Janet Moore, Baek's former supervisor, told Schirn, " 'You should be aware that we had a problem here with [Baek's] time.' " Moore told Schirn that "the judge would call and say [Baek] wasn't in court." Baek testified that when she joined PC&D, Schirn told her in front of her new supervisor, " 'You know, Janet Moore has told me, you know, some bad things about you, and, remember, you are being housed in Long Beach. It is not something you're entitled to, not a right, it's a privilege.' " He indicated that if she " 'create[d] waves,' " she would " 'jeopardize it for everybody else [Schirn had] housed in Long Beach . . . .' "

Schirn was the head deputy for the duration of Baek's time working in PC&D. He worked in downtown Los Angeles but occasionally visited the Long Beach office. When Baek was first assigned to PC&D, DDAs were supposed to work in the office five days a week. However, while working under Schirn, Baek had access to a virtual private network (PULSE) that allowed individuals to work from home. In March 2017, Schirn went to

the Long Beach office and saw that Baek was not working in the office. When he contacted to ask where she was, Baek stated that she was at home, dealing with a dishwasher issue. She later submitted a timecard stating that she had worked a full day. According to Schirn, he was not comfortable signing an inaccurate timecard and asked Baek to submit a corrected card reflecting that she had not worked the full day. Baek did so. Baek does not dispute that she was working from home on that day. She did not provide Schirn with any advance notice that she would not be in the office because the dishwasher issue was unexpected. She admitted that she did not work a full eight hours that day but denied that she told Schirn that she was in the office.

Schirn later sent an e-mail to a group of DDAs in which he stated that working in Long Beach was a privilege, not a right. Although Schirn did not mention her by name in the e-mail, Baek felt that he sent the e-mail to make a "public spectacle of [her]" and to "publicly . . . humiliate [her] or flog [her]."

In 2018, Schirn switched Baek from PC&D to the Third Strike Resentencing Unit (TSR) after rewarding Baek with a "challenge coin" for good performance. Schirn told Baek that TSR was a better assignment. Schirn copied his supervisors on the e-mail awarding Baek the challenge coin. Soon after, Schirn sought to assign Baek to the HABLIT unit. In 2017, Baek had requested that Schirn assign her HABLIT cases. However, Baek had since observed that the unit required "a lot of experience in . . . trials and things like that" and she did not feel prepared to work in the unit. When Schirn gave Baek a HABLIT case, Baek indicated she had no training or experience and did not feel

prepared to take over a case that was already in the middle of proceedings. She did not work on the HABLIT case.

In December 2018, Baek applied for a promotion to DDA IV. She took an exam and received ratings from Schirn for various skills, which were reviewed by Schirn's supervisor, Kellyjean Chun. A rating sheet was also prepared for Baek. Although she received the most credits possible for experience as a DDA III and seniority, she received 0 out of 30 possible credits for jury trial experience. Schirn gave Baek an overall score of "well qualified" in five areas and "exceptionally qualified" in one area. Baek received an overall score of 90, which placed her in Band 1, the highest scoring band of applicants. At her deposition, Baek testified that she was unaware of whether anyone promoted to DDA IV had less jury trial experience than she did. Baek did not know how many people were promoted to DDA IV from Band 1, why those promoted were chosen, or who was responsible for making promotion decisions. This was Baek's first and only application for the DDA IV position.

In 2019, a decision was made to transfer Baek to Compton to handle out-of-custody filings. Baek did not know why she was transferred to Compton. Schirn was not involved in the "administrative decision" to transfer Baek. However, on May 23, 2019, he went to the Long Beach office to tell her about the transfer in person. When Schirn arrived, Baek was not in the office. After Schirn contacted Baek, she said she would go to the office. She arrived three hours later. According to Schirn, he became concerned about Baek not working in the office and decided to remove her access to the virtual private network.

On June 5, 2019, Baek sent Schirn an e-mail accusing him of a "repeated pattern of disparate treatment" that had "created a

5

hostile work environment," following an exchange about revoking Baek's virtual private network access. Baek asserted that Schirn had called to "scream at [her] that [he] *always* require[d] *all* the DDAs to revoke their PULSE access immediately when they leave PCD." Baek indicated she had learned Schirn had not required any DDAs who left PC&D to immediately "revoke PULSE" and noted she still had two weeks left in the unit. Schirn forwarded Baek's e-mail to Chun, who forwarded it to Elizabeth Ratinoff, a Special Assistant in the Employee Relations Division. Schirn also forwarded it to a number of individuals who did not have supervisory authority over Baek, including with the note " 'OMG' " to one individual. The following day, Schirn wrote an e-mail to Baek, copying Chun. He wrote that on the day he went to Long Beach to tell her about the transfer decision, he had waited for her to return to the office from 1:30 to 3:00 p.m., when she finally arrived. While he waited, "a number of people volunteered to [him] that [Baek was] often not physically in Long Beach." Based on this and past occasions when Baek was not present at the Long Beach office, including the dishwasher incident, Schirn was "uncomfortable with [Baek's] continued use of [the virtual private network]." He therefore decided to remove Baek's access to the virtual private network and informed her of the removal.

On June 11, 2019, Ratinoff and investigator Tony Avila interviewed Baek concerning the e-mail.[1] In September 2019, Baek e-mailed Ratinoff and Avila to inquire about the status of

---

[1]    On June 11, 2019, an anonymous complaint was filed with the County of Los Angeles Policy of Equity (CPOE). The County suggests the interview with Ratinoff and Avila also concerned that anonymous complaint.

6

the investigation. Ratinoff replied that she was writing a letter explaining the outcome of the investigation and anticipated mailing it the following week. On October 15, 2019, the Employee Relations Division sent Baek a "Letter of Determination" stating that "[m]anagement has reviewed your concerns and taken the appropriate action" and the "matter is now concluded." Ratinoff subsequently explained to Baek in an e-mail thread that the matter was not referred to the CPOE unit.

Later in October 2019, Baek filed a complaint with the CPOE asserting Schirn had created a hostile work environment and subjected her to disparate treatment based on her age and race/ethnicity. However, according to a complaint intake assessment form, Baek had told DA investigators that Schirn's conduct was not based on a protected status and she did not know " 'why he did what he did.' " The complaint was closed with an indication that Baek "failed to identify sufficient independent information to proceed."

In October 2020, Baek filed two additional CPOE complaints. Baek alleged that Schirn "subjected her to disparate treatment and harassment based on gender, ethnicity and race, and to retaliation [*sic*] for her participation in previous [CPOE] complaints" by " '[t]hreaten[ing]' her to 'behave' in December 2016," failing to provide her an office,[2] making her store boxes with case information in downtown Los Angeles when she worked in Long Beach, " '[p]revent[ing]' her from transferring to other

---

[2] At her deposition, Baek admitted that she declined an office for being too dusty, stated that she did not need an office because she could work in attorney rooms at the courthouse, and turned down a colleague's offer to share an office or to give the office to Baek.

units who had expressed interest in her," and "[y]ell[ing] at her over the phone regarding PULSE access in June 2019." Baek also alleged she had informed Baeza of a "potential CPOE violation" in June 2014, and Baeza failed to take action or file a complaint on Baek's behalf.

Baek was interviewed in connection with the investigation of her complaints in November 2020 and July 2021. The investigation was completed October 25, 2022. The investigative report stated that the County Equity Investigations Unit had interviewed 15 witnesses. The report concluded that, with the exception of one witness, "none of the witnesses interviewed or documentation submitted support[ed] the allegations." The report also indicated that Baeza denied Baek's allegations.

In early 2021, Alisa Blair, a special advisor to the District Attorney, was involved in launching a prefiling diversion program for juveniles. Baek asked to be involved in the program. But when it finally launched, Baek was not brought in to work with the program. Baek testified at her deposition that she was "uniquely qualified" for the program and Blair informed her that executive administration had approved the transfer, before later telling her that the transfer was delayed.

Blair stated in a declaration that it appeared to her that Baek was "not interested in being transferred to juvenile generally," and "wanted to work only on the juvenile diversion program and not be assigned to work in the juvenile division (i.e., she did not want to be in court with a caseload)." This was corroborated by Baek's "Assignment Preferences" list, in which she stated that she "would like to work for Alisa Blair in juvenile diversion programs, not the traditional juvenile prosecutions." Blair explained to Baek that it was not possible to be transferred

8

to a program rather than a department and that Baek would need to carry a caseload and make court appearances. Blair stated that Baek called repeatedly about wanting to work with various programs without carrying a caseload or appearing in court. Baek also asserted the administration was disrespecting Blair and Blair should have more authority. Blair disagreed and also felt uncomfortable with Baek's "constant phone calls, texts, and emails . . . ." Although Blair was not responsible for deciding who would be transferred, she no longer requested that Baek be transferred and Baek ultimately was not transferred. Blair declared that Schirn was not involved in the transfer decision. She also indicated that she had never spoken to Schirn "one-on-one about [Baek] or anything else."

In April 2021, Baek filed a Department of Fair Employment and Housing (DFEH) complaint alleging that she had been the subject of harassment, discrimination, and retaliation.[3] She received an immediate right-to-sue letter.

In May 2021, Baek filed a complaint against the County asserting causes of action for gender discrimination under FEHA, retaliation under FEHA for reporting discrimination and harassment, associational disability discrimination under FEHA, retaliation for taking leave protected by the California Family Rights Act (CFRA), retaliation under FEHA for requesting reasonable accommodation, and failure to prevent harassment, discrimination, and retaliation under FEHA.

In June 2022, the County moved for summary judgment or, in the alternative, summary adjudication of all claims, on the grounds that Baek's claims based on pre-2020 activity were time-

---

[3]     Effective June 30, 2022, DFEH was renamed the Civil Rights Department. (Stats. 2022, ch. 48, § 4.)

9

barred and Baek failed to establish a prima facie case of discrimination or retaliation.  In September 2023, Baek filed her opposition.  In it, she indicated she was voluntarily dismissing her causes of action for gender discrimination and associational disability discrimination under FEHA, retaliation for taking leave protected by the CFRA, and retaliation under FEHA for requesting reasonable accommodation.  Baek also clarified that the adverse employment actions on which she was relying were: (1) failure to promote her to DDA IV; (2) failure to provide her meaningful work commensurate with her skills and unique experience; (3) failure to investigate her complaints in a timely and meaningful manner; and (4) failure to act to protect her professional reputation.

In its ruling, the trial court observed that Baek "attempts to cobble together various disparate facts occurring over many years to claim that they supply sufficient evidence to raise a triable issue of fact.  They do not."  It concluded that Baek's claim concerning the failure to promote "may be time-barred," but opted to address the County's substantive arguments concerning Baek's retaliation claim.  The trial court only expressly addressed the failure to promote claim.  It observed that Baek provided no evidence linking any of the protected activities to the failure to promote, and she testified that she did not know the process for promotion to DDA IV or why she was not promoted.  The court concluded that, "[w]ithout evidence of a causal connection between [Baek's] claimed protected activity and the adverse employment action," she had failed to establish a prima facie case for retaliation.  Because it granted summary adjudication of her retaliation claim, the trial court also granted summary

10

adjudication of Baek's cause of action for failure to prevent harassment, discrimination, and retaliation.

The trial court entered judgment in December 2023. Baek timely appealed.

## DISCUSSION

### I. Standard of Review

Summary judgment is appropriate if there are no triable issues of material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Regents of University of California v. Superior Court* (2018) 4 Cal.5th 607, 618.) A defendant moving for summary judgment has the initial burden of showing that a cause of action lacks merit because the plaintiff cannot establish an element of the cause of action or there is a complete defense. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853 (*Aguilar*).) If the defendant satisfies this initial burden, the burden shifts to the plaintiff to present evidence demonstrating there is a triable issue of material fact based on specific facts. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, at p. 850.)

"There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar*, *supra*, 25 Cal.4th at p. 850, fn. omitted.) "In determining if the papers show that there is no triable issue as to any material fact, the court shall consider all of the evidence set forth in the papers, except the evidence to which objections have been made and sustained by the court, and all inferences reasonably deducible from the evidence, except summary judgment shall not be

11

granted by the court based on inferences reasonably deducible from the evidence if contradicted by other inferences or evidence that raise a triable issue as to any material fact." (Code Civ. Proc., § 437c, subd. (c).)

" 'This court reviews de novo the trial court's decision to grant summary judgment and we are not bound by the trial court's stated reasons or rationales. [Citation.]' " (*Kaur v. Foster Poultry Farms LLC* (2022) 83 Cal.App.5th 320, 336.) " ' "We liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." ' [Citation.]" (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347.)

In the employment discrimination context, the employee's "subjective beliefs . . . do not create a genuine issue of fact; nor do uncorroborated and self-serving declarations." (*King v. United Parcel Service, Inc.* (2007) 152 Cal.App.4th 426, 433; accord, *Featherstone v. Southern California Permanente Medical Group* (2017) 10 Cal.App.5th 1150, 1159 (*Featherstone*).)

## II.    Administrative Exhaustion Under FEHA

Baek has opted to pursue only her FEHA causes of action for retaliation and failure to prevent discrimination, harassment, and retaliation. "Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [DFEH] and must obtain from the [DFEH] a notice of right to sue in order to be entitled to file a civil action in court based on violations of the FEHA. [Citations.] The timely filing of an administrative complaint is a prerequisite to the bringing of a civil action for damages under the FEHA." (*Romano v. Rockwell Internat., Inc.* (1996) 14 Cal.4th 479, 492.)

The County contends Baek failed to exhaust her administrative remedies in two ways.  First, the County argues Baek's DFEH complaint failed to reference three of the four adverse actions she has now identified as the basis of her claims.  Second, the County argues Baek failed to timely file a DFEH complaint regarding any retaliatory failure to promote and the claim is therefore time barred.  We determine the County has not established its entitlement to summary adjudication on either ground.

**A.    Failure to raise issues in the DFEH complaint**

The County argues that Baek's DFEH complaint failed to reference the County's alleged failure to promote her, the failure to protect her reputation, and the failure to provide meaningful work, thus she did not exhaust administrative remedies.[4]  We disagree.

When an employee seeks judicial relief for incidents not listed in the original charge, she must show that the additional incidents are " 'like or reasonably related to' " the allegations contained in the administrative charge.  (*Yurick v. Superior Court* (1989) 209 Cal.App.3d 1116, 1121, quoting *Ong v. Cleland* (9th Cir. 1981) 642 F.2d 316, 320.)  There need not be a " 'perfect "fit" between the administrative charge and the judicial complaint . . . if the policies of promoting conciliation and avoiding bypass of the administrative process have been served.' [Citation.]" (*Yurick*, at pp. 1121–1122, quoting *Ong*, at p. 319.) "For example, where the administrative charge alleged a pattern of discrimination or continuous retaliation, it [is] appropriate to

---

[4]    The County does not claim that Baek's DFEH complaint failed to reference its alleged failure to investigate.

13

allege subsequent unlawful conduct in the lawsuit." (*Yurick*, at p. 1122.)

Baek's DFEH complaint alleged "a coordinated pattern of continuing violations that began when [Baek] complained of sexual harassment by a co-worker in 2014" and "continued to as recently as April 2021." The allegations of Baek's DFEH complaint are essentially identical to those of the judicial complaint. The DFEH complaint alleged that upon Baek's return from leave in 2015, she was "demoted" to handling preliminary hearings, which she alleged was a task below her experience level. The DFEH complaint further alleged that in 2021, Baek did not receive a transfer to the prefiling juvenile diversion program, even though she was "uniquely qualified" to work in the program. It also alleged that Schirn disparaged Baek to her colleagues as recently as November 2020. These allegations are like or reasonably related to her arguments in opposition to summary judgment that the County failed to provide her meaningful work and failed to protect her reputation.

As to retaliatory non-promotion, the DFEH complaint only generically alleged that Baek experienced retaliation and, as a result, "was denied hire or promotion, reprimanded, demoted, denied any employment benefit or privilege, denied work opportunities or assignments, denied or forced to transfer." It did not reference Baek's December 2018 DDA IV application. However, "what is submitted to the DFEH must not only be construed liberally in favor of plaintiff, it must be construed in light of what might be uncovered by a reasonable investigation." (*Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 268 (*Nazir*); see *id.* at p. 267 [" '[i]t is sufficient that the [DFEH] be apprised, in general terms, of the alleged discriminatory parties

14

and the alleged discriminatory acts' "].)  The allegation that the County failed to promote Baek would likely lead to investigation of her DDA IV application.

Baek claimed that the failure to promote was retaliation for the same acts described in the DFEH complaint.  This is not a case where " 'the difference between the charge and the complaint is a matter of adding an entirely new basis for the alleged discrimination,' " retaliation, or harassment, which would support the conclusion that Baek did not exhaust her administrative remedies.  (*Okoli v. Lockheed Technical Operations Co.* (1995) 36 Cal.App.4th 1607, 1615; see also *Baker v. Children's Hospital Medical Center* (1989) 209 Cal.App.3d 1057, 1065 [concluding that it was "reasonable that an investigation of the allegations in the original DFEH complaint would lead to the investigation of subsequent discriminatory acts undertaken by respondents in retaliation for appellant's filing an internal grievance"].)

Under the circumstances, we conclude that a DFEH investigation into Baek's retaliation claims would likely have led to the investigation of the purported retaliatory acts she now asserts are the basis of her claims.  Resolving doubts in Baek's favor, as we must, we conclude the County did not establish that Baek failed to exhaust her administrative remedies.

**B.    Timeliness of the retaliation claim based on failure to promote**

The County additionally contends that Baek failed to timely file a DFEH complaint addressing a retaliatory failure to promote.

As an initial matter, we reject Baek's contention on appeal that the County forfeited the argument that her failure to

15

promote claim was time-barred by failing to raise it in the summary judgment moving papers below. The County's motion for summary judgment argued that claims premised on activity that occurred before 2020 were time-barred. Baek's complaint referred only generally to a failure to promote. After Baek's opposition to the motion specifically identified the failure to promote her to DDA IV as a basis of her retaliation claim, the County responded in its reply brief by arguing that the DFEH complaint was not timely filed with respect to the DDA IV promotion claim. The trial court addressed the argument in its ruling below. The issue was adequately preserved for appellate review. Nonetheless, we conclude the County failed to meet its initial burden to demonstrate it has a complete defense to the retaliatory non-promotion claim based on the statute of limitations.

FEHA claims accruing before January 1, 2019, are subject to a one-year statute of limitations. (Gov. Code, § 12960, subd. (e)(5); Stats. 2019, ch. 709, §§ 1, 3, eff. Jan. 1, 2020 [enlarging limitations period to three years from one, but expressly stating the act "shall not be interpreted to revive lapsed claims"].) The County contends the alleged adverse act of not promoting Baek to DDA IV is time-barred because it occurred in 2018; the claim accrued before January 1, 2019 and was therefore lapsed before changes in the law effective January 1, 2020 enlarged the limitations period to three years; and Baek did not file her DFEH complaint until April 2021. The County supports this argument with undisputed evidence that Baek applied for promotion in December 2018.

Yet, in *Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 941 (*Pollock*), our Supreme Court held

"that a FEHA harassment claim based on a failure to promote accrues, and the limitations period under [Government Code] section 12960 begins to run, when the aggrieved employee *knows or reasonably should know of the employer's decision not to promote him or her*." (Italics added.) The court further concluded that "when a defendant asserts a statute of limitations defense against a FEHA failure to promote claim, the burden is on the defendant to prove when the plaintiff knew or should have known of the adverse promotion decision." (*Id*. at p. 947.) Although Baek's claim is for retaliation, not harassment, the Supreme Court's analysis in *Pollock* "focus[ed] on when the promotion denial occurred" (*id*. at p. 933), and we find the reasoning equally applicable here.

The County does not cite any evidence showing that promotion decisions were made in December 2018, or that Baek was informed or should have known that she was not being promoted in December 2018, the month she applied. The County instead argues that Baek proffered no admissible evidence that she filed her administrative complaint before the statutory deadline. In a declaration, Baek contended that her December 2018 application for the DDA IV position made her eligible for promotion between March 15, 2019, and March 14, 2020. The trial court sustained the County's objection to this portion of Baek's declaration and Baek fails to challenge this ruling in her opening brief. We therefore agree that we may not consider that evidence. (*Villanueva v. City of Colton* (2008) 160 Cal.App.4th 1188, 1196.) But *the County* bore the initial burden to demonstrate that it has a defense to Baek's claims, and specifically, to establish "when [Baek] knew or should have known of the adverse promotion decision." (*Pollock*, *supra*, 11

Cal.5th at p. 947.) Evidence establishing only when Baek applied for a promotion, without evidence regarding when decisions were made, or when she knew or should have known she was not being promoted, was insufficient to demonstrate the claim accrued in December 2018, or to shift the burden to Baek to show a triable issue of fact as to the timeliness of the claim.

The County's reliance on *Williams v. City of Belvedere* (1999) 72 Cal.App.4th 84, 90, is misplaced. In *Williams*, the record clearly showed the defendant informed the plaintiff that he would not be hired more than a year before the plaintiff filed his administrative claim with the DFEH. The Court of Appeal therefore held that the trial court correctly concluded the defendant city was entitled to prevail. (*Ibid*.) The County cites no comparable evidence here.

The County did not establish it was entitled to summary adjudication of the retaliation cause of action on the ground that Baek failed to timely file a DFEH complaint addressing her failure to promote claim.

## III. The County Did Not Demonstrate its Entitlement to Summary Adjudication of Baek's Retaliation Cause of Action

### A. Applicable legal principles

"[T]o establish a prima facie case of retaliation under the FEHA, a plaintiff must show (1) he or she engaged in a 'protected activity,' (2) the employer subjected the employee to an adverse employment action, and (3) a causal link existed between the protected activity and the employer's action." (*Yanowitz v.*

18

*L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042 (*Yanowitz*); Gov. Code, § 12940, subd. (h).)

"Once a plaintiff establishes a prima face case, the employer is required to offer a legitimate, nonretaliatory reason for the adverse employment action. If the employer produces a legitimate reason for the adverse employment action . . . the burden shifts back to the employee to prove intentional retaliation or discrimination. This is the three-part burden shifting analysis of *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 79[2], 802–805 [(*McDonnell Douglas*)] . . . adopted by California for use in FEHA cases." (*Khoiny v. Dignity Health* (2022) 76 Cal.App.5th 390, 397–398.) When the burden is shifted back to the plaintiff, he or she must present evidence that the employer's decision was motivated by prohibited discrimination. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 353, 357 (*Guz*); *Horsford v. Board of Trustees of California State University* (2005) 132 Cal.App.4th 359, 377 ["A plaintiff's burden is . . . to produce evidence that, taken as a whole, permits a rational inference that intentional discrimination was a substantial motivating factor in the employer's actions toward the plaintiff."].)

The *McDonnell Douglas* framework is modified on a motion for summary judgment or summary adjudication. (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 861 (*Serri*); accord, *Arteaga v. Brink's, Inc.* (2008) 163 Cal.App.4th 327, 344 (*Arteaga*).) " '[T]he employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking or that the adverse employment action was based upon legitimate, nondiscriminatory [or nonretaliatory] factors.' [Citation.]" (*Serri*,

at p. 861.)  It is enough at this step for the employer to proffer "competent, admissible evidence" of its reasons, unrelated to bias or retaliatory motive, for the adverse employment action.  (*Guz*, *supra*, 24 Cal.4th at p. 357.)  The proffered reasons, "if nondiscriminatory [or nonretaliatory] . . . need not necessarily have been wise or correct."  (*Id*. at p. 358.)  "If the employer meets its initial burden, the burden shifts to the employee to 'demonstrate a triable issue by producing substantial evidence that the employer's stated reasons were untrue or pretextual . . . .' "  (*Serri*, at p. 861.)

>    B.    **Adverse employment action**

An adverse employment action under the FEHA includes, but is "not limited to[,] 'ultimate' employment acts, such as hiring, firing, demotion or failure to promote . . . ."  (*Jones v. Department of Corrections & Rehabilitation* (2007) 152 Cal.App.4th 1367, 1380.)  "[T]he proper standard for defining an adverse employment action is the 'materiality' test, a standard that requires an employer's adverse action to materially affect the terms and conditions of employment . . . ."  (*Yanowitz*, *supra*, 36 Cal.4th at p. 1036.)  " 'A change that is merely contrary to the employee's interests or not to the employee's liking is insufficient.' [Citation.]  ' "[W]orkplaces are rarely idyllic retreats, and the mere fact that an employee is displeased by an employer's act or omission does not elevate that act or omission to the level of a materially adverse employment action." ' . . . The plaintiff must show the employer's retaliatory actions had a detrimental and substantial effect on the plaintiff's employment."  (*McRae v. Department of Corrections & Rehabilitation* (2006) 142 Cal.App.4th 377, 386.)

20

The County demonstrated Baek could not establish a prima facie case based on the alleged failure to provide Baek with meaningful work commensurate with her skills and unique experience; failure to investigate her 2019 and 2020 CPOE complaints in a timely and meaningful manner; and failure to act to protect her professional reputation. These alleged acts either were not adverse employment actions, or Baek failed to show there are triable issues of material fact.[5]

With respect to Baek's claim that the County failed to investigate her complaints in a timely and meaningful manner, the County correctly observes that federal courts of appeals have concluded that a failure to investigate is not an adverse employment action. (*Fincher v. Depository Trust and Clearing Corp.* (2d Cir. 2010) 604 F.3d 712, 721; *Daniels v. United Parcel Service, Inc.* (10th Cir. 2012) 701 F.3d 620, 640 abrogated on another ground in *Muldrow v. City of St. Louis* (2024) 601 U.S. 346; see also *Chuang v. University of California Davis* (9th Cir. 2000) 225 F.3d 1115, 1126 [failure to respond to grievances was not adverse employment action].) We find these decisions persuasive. (See, e.g., *Guz, supra*, 24 Cal.4th at p. 354; *Featherstone, supra*, 10 Cal.App.5th at p. 1162.) Baek does not seek to distinguish a failure to investigate from a failure to timely and meaningfully investigate, or otherwise argue that these cases are not persuasive.

---

[5]    In its motion for summary judgment, the County proffered evidence and legal argument establishing that Baek had not suffered any material adverse change to the terms and conditions of her employment other than being rejected for promotion to DDA IV. This was sufficient to shift the burden to Baek to show a triable issue of material fact as to the alleged adverse actions other than non-promotion.

A recent decision of our Supreme Court, *Bailey v. San Francisco District Attorney's Office* (2024) 16 Cal.5th 611 (*Bailey*), is also instructive.  In *Bailey,* the alleged unlawful conduct of the employer, the San Francisco District Attorney's Office, included the failure to investigate a report that an employee called the plaintiff a racial slur.  (*Id.* at p. 621.)  Upon learning of the report, the personnel officer responsible for receiving complaints refused to file a formal complaint, threatened the plaintiff, criticized the plaintiff for telling others about the incident, and attempted to intimidate the plaintiff in other ways.  (*Id.* at pp. 621–622, 624.)

Our Supreme Court concluded that the personnel officer's behavior rose to the level of an adverse employment action for purposes of the plaintiff's retaliation claim.  (*Bailey*, *supra*, 16 Cal.5th at pp. 638–639.)  The court emphasized that "the human resources manager responsible for receiving complaints of harassment and discrimination in the workplace" engaged in a course of conduct that "began with the obstruction of [the plaintiff's] complaint."  (*Id.* at p. 639.)  The court thus reasoned that a "reasonable trier of fact could find that [the personnel officer's] course of conduct, in light of her position, effectively sought to withdraw Bailey's means of reporting and addressing workplace discrimination and harassment."  (*Ibid*.)

However, the court clarified that its opinion "does not hold that an employer's mere inaction (e.g., the failure to investigate a claim of racial harassment or take corrective action)—which separately may bear on the employer's liability for the harassment itself—constitutes an act of retaliation."  (*Bailey*, *supra*, 16 Cal.5th at p. 640.)  "Had the City merely failed to further investigate [the] alleged harassment following [plaintiff's]

22

report of the same . . . , no actionable retaliation would appear." (*Ibid*.)  It reiterated that the plaintiff's claim was not based on inaction, but "on an HR manager's purposeful obstruction" and "escalating threats."  (*Ibid*.)

Baek did not proffer or identify any similar evidence in this case.  There was no evidence that any person obstructed the filing of her 2019 or 2020 complaints or otherwise threatened or attempted to intimidate her.  Instead, Baek's evidence and argument alleged only that the County failed to sufficiently investigate.  This did not create a triable issue of material fact as to whether the failure to investigate itself was an adverse action.

Baek also cites no authority to support her contention that a failure to prevent or redress reputational harm is an adverse employment action.  As discussed, *Bailey* indicates that "mere inaction" does not constitute an adverse employment action for purposes of a retaliation claim.  (*Bailey*, *supra*, 16 Cal.5th at p. 640.)  Further, Baek proffered no evidence to create a triable issue of fact as to whether the alleged failure to protect her reputation materially affected the terms, conditions, or privileges of her employment.  (*Yanowitz*, *supra*, 36 Cal.4th at p. 1054.)  Aside from simply asserting that the County engaged in conduct "which had the tendency to harm [her] professional reputation," Baek failed to even argue below or on appeal that the County's conduct materially affected her employment.

Similarly, even if being assigned work beneath one's experience level could constitute a material adverse change in employment conditions, Baek failed to identify evidence sufficient to create a dispute of material fact as to whether the work she was assigned was not commensurate with her position as a DDA III.  For example, she proffered no evidence that her

responsibilities were inconsistent with those of others at the same level.  Baek refers to the County's failure to transfer her to the juvenile diversion program, but she provides no factual or legal support for the claim that the failure to transfer her to a preferred role was an adverse employment action, such as evidence that the desired position offered superior benefits, pay, or working conditions, or that she was otherwise entitled to a transfer.  (See *Akers v. County of San Diego* (2002) 95 Cal.App.4th 1441, 1459 [trial court committed instructional error where modified instruction "left room for the jury to conclude that a mere change in the conditions of employment (i.e., the denial of a transfer with the same pay and benefits, or the annoyance and embarrassment inherent in a negative performance review) was enough to constitute an adverse employment action"].)

In sum, Baek failed to show the existence of a dispute of material fact as to whether the County subjected her to adverse employment actions by failing to provide her work commensurate with her position, failing to meaningfully and timely investigate her complaints, or failing to protect her reputation, whether viewed separately or collectively.

The County, however, does not dispute that the failure to promote is an adverse employment action.  We therefore consider whether the County demonstrated Baek could not establish the remaining element of a prima facie case for retaliation based on the failure to promote.

C.  **Causation**

To shift the burden to Baek, the County was required to show Baek could not establish a causal relationship between the protected actions she took and the County's failure to promote her to DDA IV.  The protected actions Baek identified are: (1) her

24

act of reporting Knapp's alleged sexual harassment to Baeza; (2) her June 5, 2019 e-mail asserting Schirn subjected her to disparate treatment; (3) her 2019 CPOE complaint; (4) her 2020 CPOE complaints; (5) her participation in the June 11, 2019 investigative interview; (6) her participation in the November 19, 2020 investigative interview, and (7) her participation in the July 20, 2021 investigative interview.

In the trial court, the County contended: "[T]he alleged protected activity in which Plaintiff purportedly engaged consists solely of a 2014 complaint to her friend and fellow DDA, Joanne Baeza, that a co-worker named Bob Knapp had touched her back and arm for a few seconds. Aside from this, Plaintiff has not engaged in any other protected activity during the relevant time period. And although Plaintiff filed two County of Los Angeles Policy of Equity . . . complaints in October 2020 . . . , these complaints were filed *after* the alleged time period during which she contends she was 'eligible' to be promoted to DDA IV as set forth in her declaration." (Fns. omitted.) The trial court appeared to accept these arguments.

On appeal, Baek cites *Light v. Department of Parks & Recreation* (2017) 14 Cal.App.5th 75, 91, for the proposition that "[t]he requisite 'causal link' may be shown by the temporal relationship between the protected activity and the adverse employment action" and contends that "each of [the adverse employment] acts arose in close temporal relationship to when [Baek] complained about Brian Schirn."

Baek does not contend on appeal that the failure to promote "arose in close temporal relationship" to when she told Baeza about Knapp's alleged harassment in 2014 or that causality may be inferred for any other reason. By failing to

25

address this issue on appeal, Baek has forfeited the argument that any causal connection exists between her 2014 report to Baeza and the failure to promote.  (*Los Angeles Unified School Dist. v. Torres Construction Corp.* (2020) 57 Cal.App.5th 480, 492 [review of order granting summary judgment is limited to issues which have been adequately raised and briefed].)  Moreover, a gap of more than four years is not a "close temporal relationship" that would create a dispute of material fact as to causality.  (See, e.g., *Clark County School Dist. v. Breeden* (2001) 532 U.S. 268, 274, see *id.* at pp. 272–274 [20-month gap between protected activity and transfer "suggest[ed], by itself, no causality at all"]; *Cornwell v. Electra Cent. Credit Union* (9th Cir. 2006) 439 F.3d 1018, 1036 [trial court did not err in finding seven-month gap between complaint and termination too much time for reasonable jury to conclude plaintiff was terminated because of the complaint].)

Further, even accepting for purposes of argument Baek's unsupported assertion that she was eligible for promotion until March 14, 2020, protected activities occurring *after* she was no longer eligible (i.e., her October 2020 CPOE complaints and November 2020 and July 2021 interviews) could not possibly be the reason she was not promoted to DDA IV.  (*Morgan v. Regents of University of California* (2000) 88 Cal.App.4th 52, 70 (*Morgan*) [causal link requires evidence that the employer was aware plaintiff engaged in protected activity].)

However, the County's argument below did not address Baek's alleged protected activity in 2019.[6]  And, as discussed

---

[6]     In the reply in support of the motion for summary judgment, the County noted only that an anonymous complaint

26

above, although the County contends that the failure to promote occurred in December 2018, it proffered no evidence to support that claim. It therefore did not establish, as it claims on appeal, that the failure to promote Baek to DDA IV occurred before any protected activity in 2019. A defendant's burden on summary judgment "is met when [it] presents affirmative evidence that negates an essential element of the plaintiff's claim. [Citation.] A defendant may alternatively meet its burden by submitting evidence 'that the plaintiff does not possess, and cannot reasonably obtain, needed evidence' supporting an essential element of its claim." (*Santa Clara Valley Water Dist. v. Century Indemnity Co.* (2023) 89 Cal.App.5th 1016, 1034–1035; accord, *Serri, supra*, 226 Cal.App.4th at p. 861 ["the employer, as the moving party, has the initial burden to present admissible evidence showing either that one or more elements of plaintiff's prima facie case is lacking"].) In the absence of evidence showing that the promotion decision occurred before Baek's protected activities, at a minimum a factual dispute remains as to whether the decision not to promote Baek took place " 'within a relatively short time' " after her June 2019 e-mail to Schirn, her 2019

_____

about Schirn's treatment of Baek was filed with CPOE on June 11, 2019. The County asserted that when interviewed "in connection with" the complaint, Baek alleged that Schirn did not secure her an office in Long Beach and that another DDA was watching her without any basis to do so. However, Baek said she did not know why Schirn treated her differently. The County argued this was not protected activity as a matter of law. It did not mention Baek's June 2019 e-mail accusing Schirn of subjecting her to disparate treatment or the CPOE complaint Baek filed in October 2019.

complaint, or the June 2019 interview. (*Fisher v. San Pedro Peninsula Hospital* (1989) 214 Cal.App.3d 590, 615.)

The County further argues Baek cannot prove causation because she failed to establish that the decisionmakers were aware of her protected actions at the time they made the decision not to promote her. Yet, as the California Supreme Court explained in *Aguilar*, in California, a defendant moving for summary judgment must present evidence. A defendant cannot prevail by "simply point[ing] out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Aguilar*, *supra*, 25 Cal.4th at p. 854, fn. omitted.) "Whereas, under federal law, 'pointing out through argument' [citation] may be sufficient . . ., under state law, it is not." (*Id*. at p. 855.)

Thus, in *Morgan*, for example, the Court of Appeal concluded the plaintiff could not establish a causal link where the relevant decisionmakers submitted declarations affirmatively stating they were unaware of the employee's past complaints when they decided not to rehire him. (*Morgan*, *supra*, 88 Cal.App.4th at p. 73; see also *Choochagi v. Barracuda Networks, Inc.* (2020) 60 Cal.App.5th 444, 460 [affirming summary adjudication of FEHA retaliation claim where employer "demonstrated that the individuals responsible for making the decision to terminate [plaintiff's] employment . . . were not aware of [his] HR complaint"].) The County has not made a comparable showing or presented evidence demonstrating Baek could not reasonably obtain evidence on these points.

Accordingly, the County did not meet its initial burden to demonstrate Baek could not establish the element of causation as

related to her protected activities in 2019 and the failure to promote her to DDA IV.

### D. Legitimate, nonretaliatory reason for the promotion decision

Because we review the trial court's decision, not its reasons or rationales, we consider whether the grant of summary judgment was nevertheless appropriate because the County established it had a legitimate, nonretaliatory reason for not promoting Baek and Baek failed to demonstrate pretext.

On appeal, the County contends that it did not promote Baek because it promoted more qualified individuals. Although there is evidence in the record to support this reason, the County did not assert this contention below.[7] As a result, the County did not submit evidence showing that Baek was *in fact* not promoted to DDA IV because she was deemed unqualified, for example, or that there were limited DDA IV positions available and they were filled by more qualified applicants. The County's motion did not address the second and third steps of the *McDonnell Douglas* framework with respect to the failure to promote claim and did not present the nonretaliatory reason on which it now relies. Respondents, like appellants, are generally precluded from

---

[7] The majority of applicants for the DDA IV role who scored in the same band as Baek (128 of 242, or approximately 53 percent) were not selected for promotion. Baek completed 11 felony jury trials and received no credits in her application for jury trial experience, where the maximum number of credits was 30. Her most recent felony jury trial experience was from 1997, more than 20 years before she applied for the promotion to DDA IV. Of the 106 individuals the County promoted from DDA III to DDA IV between 2019 and 2022, 104 had more trial experience than Baek.

raising arguments for the first time on appeal. (*McKee v. Orange Unified School Dist.* (2003) 110 Cal.App.4th 1310, 1320.)

Moreover, a defendant must "produce[ ] substantial evidence of a legitimate, non[retaliatory] reason for the adverse employment action" to defeat the presumption of discrimination created by a plaintiff's prima facie case. (*Morgan, supra,* 88 Cal.App.4th at p. 68.) In *Morgan*, for example, the defendant met its burden at the second stage of the *McDonnell Douglas* inquiry where "each of the decision makers who decided not to hire appellant . . . explained in a declaration under penalty of perjury specific job-related reasons why appellant was not qualified for the position at issue and why the candidate selected for the position was better qualified." (*Id*. at pp. 74–75.)[8]

Here, even on appeal, the County does not identify competent, admissible evidence of the reasons that the individuals responsible for the promotion decision chose not to promote Baek. Although the reasons identified by the County on appeal are plausible, it is not "enough for the employer, in a writ petition or on appeal, to cobble together after-the-fact *possible*

---

[8]     See also *Arteaga, supra,* 163 Cal.App.4th at page 352 [armored transportation company's letter of termination stating it "lost confidence" in plaintiff because he was the only person to service ATMs with cash shortages and because of his " 'overall performance' " established legitimate, nondiscriminatory reason for employee's discharge]; *Serri, supra,* 226 Cal.App.4th at pages 846 and 862 [defendant university carried its burden of establishing a legitimate, nondiscriminatory reason for its decision to terminate plaintiff where the record contained evidence that the university vice-president made the decision and hand-delivered a letter describing the reasons for the termination].

nondiscriminatory [or nonretaliatory] reasons" for the adverse employment decision. (*Department of Corrections & Rehabilitation v. State Personnel Bd.* (2022) 74 Cal.App.5th 908, 930 (*State Personnel Bd.*).)[9] "While the stage-two burden of production is not onerous, the employer must clearly state the *actual* nondiscriminatory [or nonretaliatory] reason for the challenged conduct." (*Ibid.*) The County did not proffer evidence to explain the decision making process or criteria for the DDA IV position, or evidence of the reasons why Baek in particular was not promoted to DDA IV. The County thus did not meet its burden to show that the failure to promote Baek to DDA IV was the result of legitimate, nonretaliatory factors. (*Serri, supra,* 226 Cal.App.4th at p. 861.) It therefore was not entitled to summary adjudication of the retaliation cause of action.

## IV. The County Is Not Entitled to Summary Adjudication of Baek's Claim for Failure to Prevent Retaliation

Finally, Baek asserts the County violated Government Code section 12940, subdivision (k), which makes it unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring."

A claim under Government Code section 12940, subdivision (k) has three elements: (1) the plaintiff was subjected to discrimination, retaliation, or harassment; (2) the defendant

---

[9] *State Personnel Bd., supra,* 74 Cal.App.5th 908, was an appeal from an administrative decision by the State Personnel Board (*id.* at p. 913), and was subject to a more deferential standard of review than a motion for summary judgment or adjudication. (*Id.* at p. 922.) Nevertheless, its discussion of the showing a defendant must generally make at the second stage of the *McDonnell Douglas* inquiry is instructive.

failed to take all reasonable steps to prevent it; and (3) this failure caused plaintiff to suffer injury, damage, loss or harm. (*Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 43–44.) "[R]etaliation is a form of discrimination actionable under [Government Code] section 12940, subdivision (k)." (*Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1240, disapproved on other grounds in *Jones v. Lodge at Torrey Pines Partnership* (2008) 42 Cal.4th 1158, 1162.) "An actionable claim under [Government Code] section 12940, subdivision (k) is dependent on a claim of actual discrimination: 'Employers should not be held liable to employees for failure to take necessary steps to prevent such conduct, except where the actions took place and were not prevented.' [Citation.]" (*Scotch v. Art Institute of California* (2009) 173 Cal.App.4th 986, 1021.) In other words, when a plaintiff cannot establish a violation of the FEHA based on certain conduct, the employer as a matter of law cannot be held responsible for failing to prevent that conduct under [Government Code] section 12940, subdivision (k). (*Featherstone*, *supra*, 10 Cal.App.5th at p. 1166.)

The County's motion sought summary adjudication of the Government Code section 12940, subdivision (k) cause of action on the sole basis that there was no retaliation, discrimination, or harassment. While the cause of action was not viable to the extent it was based on an alleged failure to prevent discrimination or harassment, the County did not establish the claim failed to the extent it asserted a failure to prevent retaliation. In light of our conclusions regarding Baek's retaliation cause of action, summary adjudication must be

32

reversed of the failure to prevent cause of action. (See *Nazir*, *supra*, 178 Cal.App.4th at p. 288.)

## DISPOSITION

The judgment is reversed. The matter is remanded with directions that the trial court vacate its order granting the County's motion for summary judgment. The court is to enter a new order denying summary adjudication of the causes of action for retaliation and failure to prevent retaliation. The parties shall bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

EGERTON, J.

33