Filed 10/23/25  Stewart v. County of Los Angeles CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| TRACY STEWART, | B330733 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. 20STCV49136) |
| v. | |
| COUNTY OF LOS ANGELES, et al. | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Upinder S. Kalra, Judge.  Affirmed.

Law Office of Herb Fox, Herb Fox; Romero Law and Alan J. Romero for Plaintiff and Appellant.

Peterson, Bradford, Burkwitz, Gregorio, Burkwitz & Su, Avi Burkwitz, Sherry M. Gregorio, and Christina Kataoka for Defendants and Respondents.

Plaintiff Tracy Stewart appeals from the grant of summary judgment on her complaint against defendants County of Los Angeles and Timothy Murakami (Murakami) (collectively, defendants). Stewart asserted claims for discrimination, harassment, and failure to prevent discrimination, harassment, or retaliation under the Fair Employment and Housing Act (FEHA, Gov. Code, § 12900, et seq.), primarily alleging defendants passed her over for promotions because of racial animus. She contends the trial court erred by finding her claims based on the failure to promote her between 2013 and 2014 were time-barred, applying the wrong legal standard to her discrimination claim, and concluding she did not raise a triable issue as to her harassment claim. We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A. Stewart's Employment and Job Applications**

In 1996, Stewart, an African American woman, began working for the Los Angeles County Sheriff's Department (the Sheriff's Department) as a deputy sheriff. She rose through the ranks over the years, eventually becoming lieutenant watch commander at Men's Central Jail.

In October 2013, Stewart sent her resume to several patrol stations to interview for watch commander positions. Stewart had five interviews, including interviews with the City of Industry and Pico Rivera stations. It was the Sheriff's Department's policy for the station captain to prepare a memorandum after an interview stating whether the candidate was acceptable or not acceptable for the role.

In late October 2013, Stewart interviewed for the watch commander position for the City of Industry station. Murakami

2

was the station captain at the time. Stewart provided Murakami with a resume that was addressed to the wrong station and had formatting issues. She wore a mis-matched uniform to the interview; the shirt was part of one Sheriff's Department uniform, and the pants were from another. Murakami prepared a memorandum stating Stewart was unacceptable for the job. Stewart was aware of this and knew she did not get the position by December 15, 2013.

Stewart also received a memorandum marking her as unacceptable after interviewing with Captain James Thornton, Jr. for the watch commander position for the Pico Rivera station. According to Stewart, after the interview, she got a phone call from Captain Thornton telling her that she could either withdraw her application or he would submit a formal memorandum saying she was not acceptable for the role because he needed someone with more tactical experience. Stewart did not get offered the position. Stewart stated she met with an assistant sheriff to "discuss the mistreatment by Captain Thornton."

A week or two later, in February 2014, Stewart was given a watch commander position at the Altadena station. Stewart worked in that role for approximately nine months before she began serving as operations lieutenant for the Sheriff's Department's Parks Bureau. In February 2016, Stewart accepted a transfer to the Norwalk station to serve as its operations lieutenant.

Sheriff Alex Villaneuva assumed office in 2018, and Murakami was appointed to be assistant sheriff in December of that year. In March 2019, Murakami began serving as the undersheriff.

Prior to that, in February 2019, Stewart observed Murakami speak to a group of deputies at the Norwalk station. Stewart was not a part of the conversation, which happened about 20 feet away from her open office door. Stewart claimed she heard Murakami say that Captain Leonard McCray (Stewart's husband) was inept at his job as he had mismanaged the Malibu fires. After Murakami was done speaking with the deputies, Stewart approached Murakami and told him she was disappointed with how he treated her when she interviewed for the City of Industry watch commander position in 2013 because he would not meet her eyes during the interview. Murakami said he recalled she wore a mismatched uniform and had mistakes on her resume and that those issues distracted him. He apologized and shook her hand.

Also in 2019, Stewart applied for captain positions for the Crescenta Valley and Altadena stations. The Sheriff's Department used the following procedure for selecting applicants for captain positions: the sheriff, undersheriff, and assistant sheriffs first evaluated the candidates' applications. The executive officers approved several applicants from an initial pool for interviews with a panel of city officials from the city where the station was located. The city officials then selected the candidate they desired as captain of the station. It was policy to affirm the city officials' choice as often as possible to respect their decision. This procedure was followed when Stewart applied.

The Sheriff's Department executive officers, including Murakami as the undersheriff, selected Stewart as a candidate to interview with city officials for two captain positions. Stewart interviewed with city officials to be captain of the Crescenta Valley station in April 2019, but she did not get the position. The

4

Sheriff's Department executive officers also selected Stewart to interview with city officials for the captain position for the Altadena station. Stewart interviewed in June 2019, but city officials chose a different candidate. Murakami was not involved in the interview process conducted by the city officials, nor was his opinion solicited by the cities.

Stewart also applied for a chief's aide position in 2019 but did not get the job. Murakami stated he recommended Captain La Tonya Clark, an African American woman, for the position because she had over "15 years of line-time experience" and he believed she was the most qualified candidate.

## B.    Stewart Files an Administrative Complaint

In December 2020, Stewart filed an administrative complaint with the Department of Fair Employment and Housing (DFEH).[1] She alleged she was harassed and discriminated against because of her race and as a result of the discrimination was "denied hire or promotion, . . . denied work opportunities or assignments, denied or forced to transfer." She received an immediate right-to-sue letter.

## C.    Civil Lawsuit and Stewart's Allegations

Stewart sued defendants in late December 2020. Stewart's operative second amended complaint asserted three causes of action under FEHA: discrimination on account of ancestry, color, or race; work environment harassment on account of ancestry, color, or race; and failure to prevent harassment, discrimination, or retaliation.

---

[1]    Effective June 30, 2022, DFEH was renamed the Civil Rights Department. (Stats. 2022, ch. 48, § 30.)

Stewart alleged that she was denied the watch commander position for the City of Industry station in November 2013 because Murakami was "motivated by a wrongful racial animus towards [Stewart] . . . and [her] race was a substantial motivating factor in denying her the job position." Stewart said she learned of Murakami's racial animus in July 2020 when she was told of it by Lieutenant Carlos Parga. Lieutenant Parga, who also had a lawsuit pending against defendants, previously worked as an operations lieutenant under Murakami. Lieutenant Parga allegedly told Stewart that Murakami referred to her, "and other African Americans who worked at (or desired to work at) [the City of Industry station], as a 'kurombo,' a highly offensive Japanese term[ ] that specifically equates with the N-word in terms of offensiveness and maliciousness." Lieutenant Parga said Murakami made the comments to him around August 2016.

Stewart also alleged that a "substantial motivating reason" for Captain Thornton's refusal to give her the watch commander position she interviewed for in November 2013 "was a wrongful racial animus towards [Stewart's] African American race/ancestry." (Underlining omitted.)

Stewart's complaint also included allegations concerning the incident in February 2019 where Murakami called Stewart's husband inept while addressing a group of deputies. Stewart alleged the "reprimanding was the result of a wrongful racial animus by Undersheriff Murakami targeting [Stewart] as a result of her race, ancestry, color, and association with a member of a protected class."

Additionally, Stewart alleged that a substantial motivating reason for her not getting the captain position for the Crescenta

6

Valley station was her race and "that Murakami's conduct was a substantial contributing factor to the denial of this promotion . . . . " As to the captain position for the Altadena station, Stewart alleged that despite her qualifications and "glowing performance evaluations," promotional opportunities continued to elude her.

Finally, as to the chief's aide position she sought in 2019, Stewart claimed a commander called her and told her that Murakami blocked her promotion to the position. It had allegedly been ordered that all transfers of lieutenants had to be approved by Murakami.

## D. Trial Court Grants Defendants' Motion for Summary Judgment

Defendants moved for summary judgment, or in the alternative, summary adjudication of all claims. Defendants argued that (1) Stewart's claims were time-barred; (2) there was no triable issue of fact as to the discrimination claim because Stewart could not establish any discriminatory motive based on race and all actions taken by defendants were supported by legitimate business reasons; (3) there was no triable issue of fact as to the harassment claim because Stewart could not establish she was ever harassed or that there was severe or pervasive conduct; and (4) there was no triable issue of fact as to the cause of action for failure to prevent discrimination, harassment, or retaliation because Stewart could not establish such conduct occurred. Stewart opposed the motion.

After multiple hearings and supplemental briefing from the parties, the trial court granted defendants' motion in its entirety. The court noted the alleged unlawful employment practice for

7

both the discrimination and harassment claims was the same—the failure to promote.  The trial court found that the claims that occurred in 2013 (denial of the watch commander positions) were time-barred by the applicable statute of limitations.

As to the claims that occurred in 2019 (denial of the captain and chief's aide positions), the trial court found there was no triable issue of material fact.  Regarding the first cause of action for discrimination, the court found defendants met their burden of showing legitimate business reasons for denying Stewart the captain and chief's aide positions in 2019.  The court found Stewart failed to raise a triable issue under the burden shifting test set forth in *McDonnell Douglas Corp. v. Green* (1973) 411 U.S. 792 (*McDonnell Douglas*), as she did not show that a reasonable factfinder could rationally conclude that defendants' proffered nondiscriminatory reasons for the employment decisions were pretextual.[2]  As to the second cause of action for harassment, the court found Stewart was not denied promotions in 2019 because of racial animus and that any remaining non-promotion based conduct was not so severe or pervasive as to create an abusive working environment.  Lastly, the court concluded that because there was no underlying actionable

---

[2]     Under the *McDonnell Douglas* test, "'if the plaintiff establishes a prima facie case supporting his or her discrimination claim, the burden of production shifts to the employer to rebut the presumption of discrimination by offering a legitimate, nondiscriminatory reason for the adverse employment action.'" (*Wawrzenski v. United Airlines, Inc.* (2024) 106 Cal.App.5th 663, 684.)  "'If the employer puts forth a legitimate basis for the adverse employment action, the burden of production shifts to the plaintiff to present evidence creating a triable issue of fact showing the employer's stated reason was a pretext for unlawful animus in order to avoid summary judgment.'" (*Id.* at p. 685.)

8

discrimination or harassment, the third cause of action failed as a matter of law.

The trial court entered judgment for defendants, and Stewart appealed.

## DISCUSSION

### A. Governing Law and Standard of Review

"A party is entitled to summary judgment only if there is no triable issue of material fact and the party is entitled to judgment as a matter of law." (*Grebing v. 24 Hour Fitness USA, Inc.* (2015) 234 Cal.App.4th 631, 636.) "A defendant moving for summary judgment must show that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense. [Citation.] If the defendant meets this burden, the burden shifts to the plaintiff to present evidence creating a triable issue of material fact. [Citation.] A triable issue of fact exists if the evidence would allow a reasonable trier of fact to find the fact in favor of the party opposing summary judgment." (*Id.* at pp. 636–637.) The plaintiff must produce substantial responsive evidence; "'[r]esponsive evidence that gives rise to no more than mere speculation cannot be regarded as substantial, and is insufficient to establish a triable issue of material fact.'" (*Granadino v. Wells Fargo Bank, N.A.* (2015) 236 Cal.App.4th 411, 415.) "We review the trial court's ruling on a summary judgment motion de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opponent." (*Grebing*, at p. 637.)

**B.     Stewart's Claims Based on the Alleged Failure to Promote Between 2013 and 2014 are Time-Barred**

We begin by addressing Stewart's contention that the trial court erred in concluding that her claims based on the failure to promote her between 2013 to 2014 were time-barred.  Stewart contends that the continuing violation doctrine applied to preserve the claims.  We disagree.

"An employee who wishes to file suit under the FEHA 'must exhaust the administrative remedy provided by the statute by filing a complaint with the' DFEH, 'and must obtain from the [DFEH] a notice of right to sue.'  [Citation.]  'The timely filing of an administrative complaint' before the DFEH 'is a prerequisite to the bringing of a civil action for damages.'" (*Pollock v. Tri-Modal Distribution Services, Inc.* (2021) 11 Cal.5th 918, 931.)  At the time of the alleged failure to promote Stewart for the watch commander roles, FEHA provided that "no administrative complaint alleging a violation of its provisions could be filed with the DFEH 'after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred.'" (*Ibid.*)  A FEHA discrimination or harassment claim based on an unlawful failure to promote accrues when the aggrieved employee knows or reasonably should have known of the employer's decision not to promote him or her.  (*Id.* at p. 941; see *Williams v. City of Belvedere* (1999) 72 Cal.App.4th 84, 90 [administrative complaint alleging racial discrimination untimely where defendant informed plaintiff he would not be hired for job more than a year before he filed claim with DFEH].)

It is undisputed that Stewart was aware she did not get the watch commander position for the City of Industry station by December 15, 2013.  As to the watch commander position for the

Pico Rivera station, Stewart stated that after Captain Thornton marked her as unacceptable, she met with an assistant sheriff to discuss Captain Thornton's treatment. This meeting occurred before Stewart received a watch commander position at the Altadena station in February 2014. Stewart was thus aware she did not receive the watch commander position for the Pico Rivera station at the latest by February 2014. Accordingly, Stewart's claims based on an unlawful failure to promote between 2013 and 2014 are untimely, and she cannot recover for the alleged acts unless an exception, such as the continuing violation doctrine, applies.

The continuing violation doctrine "allows liability for unlawful employer conduct occurring outside the statute of limitations if it is sufficiently connected to unlawful conduct within the limitations period." (*Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 802 (*Richards*).) The doctrine requires proof that (1) the conduct occurring outside the statute of limitations is "sufficiently similar in kind" to the conduct within the limitations period, (2) the conduct occurred with "reasonable frequency," and (3) the conduct had not "acquired a degree of permanence." (*Id.* at p. 823.)

However, the doctrine does not apply to discrete, independently actionable wrongs. (*National Railroad Passenger Corp. v. Morgan* (2002) 536 U.S. 101, 113; *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1198.) "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each . . . adverse employment decision constitutes a separate actionable 'unlawful employment practice.' [The plaintiff] can only file a charge to cover discrete acts that

11

'occurred' within the appropriate time period." (*National Railroad Passenger Corp.*, at p. 114, fn. omitted.)

Stewart fails to address the legal authority, which the trial court cited, holding that a claim based on an unlawful failure to promote is a discrete act; as soon as the employee learns of the promotion decision, the clock starts ticking for statute of limitations purposes. Once Stewart was made aware she was not getting the watch commander roles in 2013 and 2014, her claims accrued, and she had one year to file an administrative complaint alleging a FEHA violation. Consequently, the continuing violation doctrine does not apply to Stewart's allegations based on the alleged failure to promote her between 2013 and 2014.

In any event, Stewart fails to meet the three-part test of *Richards*. Stewart does not show the discriminatory acts occurred with reasonable frequency. After Stewart was not selected for the watch commander positions in 2013 and 2014, the next conduct at issue occurred more than five years later. Moreover, there was no evidence that defendants gave Stewart the impression that the watch commander decisions were not permanent or final.

Thus, the trial court properly concluded Stewart's claims based on an unlawful failure to promote her between 2013 and 2014 were time-barred.

## C.  Stewart Did Not Raise a Triable Issue of Fact as to Her Discrimination Claim

For the first time on appeal, Stewart claims she produced direct evidence of racial animus. She argues the trial court erroneously required her to demonstrate that defendants' proffered reasons for not promoting her in 2019 were pretext

because the requirement to show pretext does not apply in the face of direct evidence of racial animus. We conclude Stewart did not present direct evidence showing that the challenged failures to promote her in 2019 were substantially motivated by racial animus.

FEHA prohibits employers from discriminating against employees because of race. (Gov. Code, § 12940, subd. (a).) To establish a claim for discrimination under FEHA a plaintiff must prove that: (1) she was a member of a protected class or engaged in protected activity; (2) she suffered an adverse employment action; and (3) the employer acted with a discriminatory or retaliatory motive. (*Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 355.) A plaintiff must show that discrimination was a substantial motivating factor in the adverse employment decision. (*Harris v. City of Santa Monica* (2013) 56 Cal.4th 203, 232.)

A defendant employer moving for summary judgment on a FEHA discrimination cause of action has the initial burden of "presenting evidence that *either* negates an element of the employee's prima facie case, or establishes a legitimate nondiscriminatory reason for taking the adverse employment action against the employee." (*Swanson v. Morongo Unified School Dist.* (2014) 232 Cal.App.4th 954, 966.) To raise a triable issue, the plaintiff may establish discriminatory motive either by direct evidence or by circumstantial evidence. (*Zamora v. Security Industry Specialists, Inc.* (2021) 71 Cal.App.5th 1, 34 (*Zamora*); *DeJung v. Superior Court* (2008) 169 Cal.App.4th 533, 549 (*DeJung*).) When a plaintiff proffers circumstantial evidence, courts apply the three-stage burden-shifting test set forth by the United States Supreme Court in *McDonnell Douglas* for trying

13

claims of employment discrimination based on a theory of disparate treatment. (*DeJung*, at p. 549, fn. omitted.)

However, the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination. (*DeJung*, *supra*, 169 Cal.App.4th at p. 550; *Zamora*, *supra*, 71 Cal.App.5th at p. 35.) "Direct evidence is evidence which, if believed, proves the fact of discriminatory animus without inference or presumption." (*DeJung*, at p. 550.) "Comments demonstrating discriminatory animus may be found to be direct evidence if there is evidence of a causal relationship between the comments and the adverse job action at issue." (*Ibid.*; *Zamora*, at p. 35 ["Direct evidence includes comments that demonstrate discriminatory animus and a causal relationship between those comments and the adverse employment action"].)

In her appeal, Stewart does not challenge the trial court's finding that she failed to raise a triable issue under the *McDonnell Douglas* framework. Instead, she argues that the *McDonnell Douglas* test is inapplicable because she has presented the following direct evidence that the failure to promote her in 2019 was motivated by racial animus: (1) Murakami's use of a racial slur, made in a foreign language to Lieutenant Parga in 2016, to describe Stewart and other African American employees; (2) Murakami's statement to Lieutenant Parga that he did not select Stewart for the watch commander position in 2013 because of her race; and (3) a comment by Sheriff Villaneuva made to a chief that the Sheriff's Department had "'enough of you'" in management, purportedly referring to African Americans.

While statements like those alleged by Stewart are not to be condoned, Stewart fails to show that they caused her to be

14

denied the position of captain or chief's aide in 2019. As to the chief's aide position, the evidence shows only that Murakami selected La Tonya Clark, an African American woman, for the position because she had 15 years of line-time experience. Stewart points to no evidence showing a causal relationship between comments she identifies and the decision to hire Clark instead of her.

Concerning the captain positions, it is undisputed that Murakami and Sheriff Villanueva approved Stewart as a candidate to interview with city officials, and the city officials selected the candidate they wanted to serve as captain for each station. There is no evidence that Murakami or Sheriff Villaneuva had any involvement with the city officials' ultimate selections.

Stewart attempts to rely on "the cat's paw doctrine" in arguing that Murakami's racial animus may have influenced the city officials' decision. Under the cat's paw doctrine, "'[i]f [the formal decision maker] acted as the conduit of [an employee's] prejudice—his cat's paw—the innocence of [the decision maker] would not spare the company from liability.'" (*Reid v. Google, Inc.* (2010) 50 Cal.4th 512, 542.) Citing *DeJung*, Stewart contends there was sufficient evidence to permit a factfinder to consider whether Murakami influenced the city officials' employment decisions. According to Stewart, when she was denied captain positions in 2019, there was a policy that all promotions and transfers from sergeant and higher be approved by Murakami. She speculates that the alleged policy could have influenced the city officials who interviewed her, though she does not present evidence that they were aware of it.

15

Stewart's reliance on *DeJung* is misplaced.  In *DeJung*, the chair of a hiring committee told the plaintiff "they want[ed] somebody younger, maybe in their 40's" for the relevant position.  (*DeJung, supra,* 169 Cal.App.4th at p. 550, italics omitted.)  The chair of the hiring committee similarly told someone else that the plaintiff was "'a great guy but we're looking for someone younger.'"  (*Ibid.*)  The comments were made by the head of the hiring committee concerning the adverse employment decision at issue in the case, and thus, they raised a rational inference of a causal link between the discriminatory animus (age discrimination) and the adverse employment action.  (*Id.* at pp. 550–551.)  Unlike in *DeJung*, Murakami's comments were not made in connection with the chief's aide or captain positions, and there is no evidence that Murakami held a role similar to the chair of the hiring committee in *DeJung*.  There is no evidence that the city officials who decided which candidates to hire were influenced by any racial animus harbored by Murakami.

## D.      Stewart Failed to Raise a Triable Issue of Fact as to Her Harassment Claim

Stewart also contends the trial court erred in granting summary judgment on her harassment claim under FEHA because there was a triable issue of fact concerning the severity and pervasiveness of the alleged harassment.  We are not persuaded.[3]

Government Code section 12940, subdivision (j)(1) makes it unlawful for an employer or any other person to harass an

_____

[3]      Because we resolve Stewart's claim on the merits, we need not address defendants' contention that Stewart forfeited her claim by failing to raise it in the trial court.

16

employee because of race.  To prevail on a claim of racial harassment, an employee must show she was subjected to harassing conduct that was (1) unwelcome; (2) because of race; and (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment.  (See *Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 279 (*Lyle*) [setting out prima facie requirements for sexual harassment claims under FEHA].)

"Whether a work environment is reasonably perceived as hostile or abusive 'is not, and by its nature cannot be, a mathematically precise test.'  [Citation.]  'The working environment must be evaluated in light of the totality of the circumstances.'"  (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 627 (*Bailey*).)  "'"These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."'  [Citation.]  "'The required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct.'"  [Citation.]  "'[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious)'" are not sufficient to create an actionable claim of harassment."  (*Ibid.*)  "[H]arassment focuses on situations in which the social environment of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee."  (*Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706, italics omitted.)  Official employment actions, such as a failure to promote, may be considered when evaluating a harassment claim

17

if the conduct contributed to conveying an offensive message to the employee. (*Id.* at pp. 708–709.)

Here, Stewart asserts that the racial animus harbored by Sheriff Villaneuva and Murakami was sufficient to raise a triable issue regarding the severity and pervasiveness of the alleged harassment. Stewart first points to racial animus by Murakami as his motivation for denying Stewart the watch commander position she interviewed for in 2013. As discussed, Stewart's claim for harassment based on the failure to promote her in 2013 is time-barred. Even putting aside that the claim is untimely, Stewart admitted in response to defendants' separate statement of undisputed facts that the "October 2013 incident," which was when Stewart interviewed with Murakami, "was not harassment."

Second, Stewart asserts she presented "direct evidence" that Murakami and Sheriff Villaneuva's alleged racial animus stopped her from being promoted in 2019, which is sufficient to demonstrate severe and pervasive harassment. We have already concluded that Stewart did not present direct evidence that defendants' failure to promote her in 2019 was caused by discriminatory bias based on her race.

Lastly, Stewart points to Murakami's use of a racial slur to describe her to Lieutenant Parga in 2016. The absence of direct harassment, however, affects the showing that Stewart must make. Generally, a plaintiff must show that harassment communicated to others occurred "in her immediate work environment, and that she personally witnessed it. [Citation.] The reason for this is obvious: if the plaintiff does not witness the incidents involving others, 'those incidents cannot affect . . . her perception of the hostility of the work environment.'" (*Lyle*,

18

*supra*, 38 Cal.4th at p. 285, fn. omitted; cf. *Bailey*, *supra*, 16 Cal.5th at pp. 634–635 [issue of material fact existed as to whether co-worker's use of "N-word" directed specifically at Black employee, who shared office space and work duties with the co-worker, was sufficiently severe so as to create a hostile work environment].)

Murakami's comment to Lieutenant Parga was not made in Stewart's presence, and there is no indication that he intended the comment to be relayed to Stewart. Stewart had only two interactions with Murakami over a six-year period—one in 2013 when she interviewed for the watch commander position and a second in February 2019 when she discussed the interview with Murakami and he apologized. Stewart does not point to any evidence showing that learning of Murakami's comments in 2020 affected or interfered with her work performance.

Therefore, Stewart does not show the trial court erred in concluding she did not raise a triable issue as to her harassment cause of action.

## E. Stewart's Claim for Failure to Prevent Discrimination, Harassment, or Retaliation Fails as a Matter of Law

Because she did not raise a triable issue as to her discrimination and harassment claims, and because she did not allege a claim for retaliation under FEHA, Stewart's claim for failure to prevent such conduct necessarily fails. (*Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1410.)

19

## DISPOSITION

The judgment is affirmed.  The parties to bear their own costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MORI, J.

We concur:


ZUKIN, P. J.


VAN ROOYEN, J. [**]

---

[**]     Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to Article VI, section 6, of the California Constitution.

20